UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL D. DARLING,

                                        Plaintiff,


v.                                                                          5:24-cv-1003
                                                                            (BKS/TWD)


JOSEPH M. SISE,

                                        Defendant.

_____

APPEARANCES:                                              OF COUNSEL:

MICHAEL D. DARLING
*Plaintiff, pro se*
24-B-0396
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13024

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

## I.      INTRODUCTION

Currently before the Court for sufficiency review is an amended complaint filed by *pro se*

plaintiff Michael D. Darling ("Plaintiff").  Dkt. No. 16.  For the reasons set forth below, the

undersigned recommends the amended complaint be dismissed.

## II.     BACKGROUND

Plaintiff commenced the instant action by filing a complaint on August 15, 2024, s*ee* Dkt.

No. 1, along with a motion to proceed in forma pauperis ("IFP"), *see* Dkt. Nos. 2, 4.  In his

complaint, Plaintiff alleged Defendant Joseph M. Sise ("Defendant") "violated Article VI of the

U.S. constitution" as well as, *inter alia*, Plaintiff's "fourth, fifth, sixth and fourteenth amendment[]" rights.  Dkt. No. 1 at 4.[1]

The matter was assigned to the undersigned for sufficiency review pursuant to 28 U.S.C. § 1915, and prior to this Court's Report and Recommendation, a document purporting to be an answer submitted on behalf of the Defendant was filed.  *See* Dkt. No. 9.  The undersigned directed the Clerk to strike the answer by text order, explaining: "if the complaint is accepted for filing once the initial review is complete, the Court will issue a summons and make further directions regarding service of the complaint."  Dkt. No. 10.

By Report-Recommendation and Order dated October 25, 2024, the undersigned granted Plaintiff's IFP application and recommended dismissal of the complaint for lack of subject matter jurisdiction.  *See generally*, Dkt. No. 11.  On November 15, 2024, Plaintiff filed a submission, *see generally*, Dkt. No. 16, which the Honorable Brenda K. Sannes, Chief U.S. District Judge, construed as an amended complaint, Dkt. No. 18, and referred to the undersigned for review.

## III.    LEGAL STANDARD

This Court previously set forth the legal standards for review under 28 U.S.C. §§ 1915 and 1915A, *see* Dkt. No. 11 at 3-4, therefore, those standards will not be repeated here.

## IV.    ANALYSIS

In his submission which was construed as an amended complaint, Plaintiff appears to respond to the stricken answer, *see*, *e.g.*, Dkt. No. 16 at 3 ("Mr. Sise states . . . in the 'Answer'

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

document."), and provides additional allegations about Defendant's representation of Plaintiff in the criminal matter discussed in his complaint. *Compare* Dkt. No. 16, *with* Dkt. No. 1. Plaintiff avers "Mr. Sise is guilty of violating many state and Federal laws, rules and regulations." Dkt. No. 16 at 15. He argues:

> Mr. Sise under the Federal Constitution violated Mr. Darling's 5th, 6th and 14th Amendments. He has conspired with the judge and DA to get easy money for little or no work in belief Mr. Darling is a criminal and stupid. Mr. Darling demands a jury trial (his right) to prove to the court that he is entitled to $25,000 refund or for the judge to enforce Mr. Sise to pay the money back to Mr. Darling. Mr. Darling also believes Mr. Sise should pay a penalty for his actions.

*Id*. at 15. For a complete statement of Plaintiff's allegations, reference is made to his submissions.

As previously explained, federal courts exercise limited jurisdiction pursuant to Article III of the U.S. Constitution. "When subject matter jurisdiction is lacking, 'the district court lacks the power to adjudicate the merits of the case . . . .'" *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1074 (2d Cir. 2021) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016)).

> Subject matter jurisdiction can be established either through federal question or diversity jurisdiction. Under 28 U.S.C. § 1331, a case arising under the Constitution, laws, or treaties of the United States[ ] is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State, and the amount in controversy is more than $75,000, is a diversity case.

*Lewis v. Despos, LLC*, No. 8:24-CV-0079 (AMN/CFH), 2024 WL 2846991, at *7 (N.D.N.Y. June 5, 2024) (internal quotations omitted), *report and recommendation adopted*, 2024 WL 3371063 (N.D.N.Y. July 11, 2024).

Here, given Plaintiff's allegations that the Defendant violated his constitutional rights, it is apparent Plaintiff seeks to invoke this Court's federal question jurisdiction. However,

"[b]ecause the United States Constitution regulates *only the Government, not private parties,* a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (quoting *United States v. Int'l. Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)) (emphasis added, internal quotations omitted). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person *acting under color of state law, and* (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (emphasis added).

Even afforded a liberal construction, Plaintiff's submissions lack any facts suggesting Mr. Sise acted under color of state law. "The law is well established that attorneys, whether privately-retained or court-appointed, do not act under color of state law when they perform traditional functions of counsel." *Saio Barzee v. Aaron M. Wilson, Jr., et al.*, No. 5:24-CV-1237 (DNH/MJK), 2024 WL 4751552, at *10 (N.D.N.Y. Nov. 12, 2024) (collecting cases); *see also*, *e.g.*, *Bulluck v. Benjamin*, No. 3:24-CV-0347 (GTS/ML), 2024 WL 4250316, at *3 (N.D.N.Y. July 11, 2024) (explaining, "private attorneys[] are not state actors.").

Therefore, "[t]o the extent plaintiff wishes to sue his attorney . . . he cannot proceed under section 1983." *Ali v. Shattuck*, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *5 (N.D.N.Y. May 29, 2024), *report and recommendation adopted sub nom. Ali v. Dow*, 2024 WL 3460745 (N.D.N.Y. July 18, 2024). Next,

> to the extent plaintiff may wish to allege that his defense counsel engaged in a conspiracy with the prosecutors and/or [the state court] to deprive him of his constitutional rights, pursuant to 42 U.S.C. § 1983, "[a] conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law."

*Id*. at *6 (quoting *Wilson v. Flanders*, No. No. 3:23-CV-0263 (DNH/TWD), 2023 WL 3251992, at *4 (N.D.N.Y. May 4, 2023), *report and recommendation adopted*, 2023 WL 3496372 (N.D.N.Y. May 17, 2023), and citing *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018)).  Alternatively, "[t]o the extent plaintiff wishes to bring a legal malpractice claim against his attorney, this would be a state law claim."  *Id*. (citing *Delap v. Mackey*, No. 1:21-CV-0847 (LEK/CFH), 2021 WL 5991702, at *7 (N.D.N.Y. Sept. 15, 2021), *report and recommendation adopted as modified*, 2021 WL 5354762 (N.D.N.Y. Nov. 17, 2021)).

Accordingly, Plaintiff has failed to invoke federal question jurisdiction.  Moreover, as with his original complaint, *see* Dkt. No. 11 at 6-7, Plaintiff has not alleged facts suggesting this Court's exercise of diversity jurisdiction would be proper.  Because Plaintiff has failed to demonstrate the existence of a controversy over which this Court has subject matter jurisdiction, dismissal is required.  However, "dismissals for lack of subject matter jurisdiction must be without prejudice . . . ."  *Green*, 16 F.4th at 1074 (internal quotations and citation omitted).  Therefore, while the undersigned has serious doubts as to Plaintiff's ability to amend his complaint such that this court's exercise of jurisdiction over Mr. Sise would be proper, the amended complaint must be dismissed without prejudice.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 16) be **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[2]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: November 25, 2024
　　　Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[2] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2024 WL 2846991
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

DESPOS, LLC, et al., Defendants.

No. 8:24-CV-00079 (AMN/CFH)
|
Signed June 5, 2024

**Attorneys and Law Firms**

Scott Phillip Lewis, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

**I. In Forma Pauperis**

**\*1** Plaintiff pro se Scott Lewis ("plaintiff") [1] purported to commence this action on January 17, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2]

[1]  The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others. See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024); Lewis v. Essex Cnty., 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 22 (dismissing complaint with leave to amend); Lewis v. Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 11 (Report-Recommendation recommending dismissal pending review); Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10 (Report-Recommendation recommending partial dismissal pending review); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. Williamson Cnty., 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024); Lewis v. Williamson Cnty., 1:21-CV-00074

2024 WL 2846991

(ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice).

2      Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Initial Review

### A. Legal Standard

**\*2** 28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

3      These requirements apply to non-prisoner pro se litigants. See N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL

6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). [4] Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction ... and (3) a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

[4]     All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

**\*3** Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Plaintiff's Complaint

Plaintiff provides a detailed summary of his "[r]elevant [m]edical [h]istory," [5] alleging that "[i]n November 2015, [he] was involved in a hit and run accident ... in Austin, Texas[,] leaving [p]laintiff with a concussion and traumatic brain injury (TBI)." Compl. at 3, ¶13. [6] "The police who were involved never followed up with [p]laintiff, seemingly attempting to cover up what happened." Id. "After the 2015 hit and run incident, [p]laintiff experienced a progressive increase in attention-deficit/ hyperactivity disorder ('ADHD') symptoms associated with the post-traumatic stress disorder ('PTSD') from the accident and lack of police professionalism, follow up and transparency." Id. at 3, ¶14.

[5]     Plaintiff includes a nearly identical recitation in at least two of his other cases. See Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023); see also Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023).

[6]     Citations are to the pagination generated by CM/ECF, located in the header of each page.

"On January 25, 2019, [p]laintiff was arrested for driving while intoxicated in Williamson County, T[exas]." Compl. at 3, ¶15. "Selective, manipulated and edited portions of the arrest were broadcast to over a million viewers on a television show

advertising the edited arrests they were broadcasting as 'unfiltered and unfettered,' when in fact, it was not." Id. "This show was called 'LivePD,' a hit television show that used law enforcement as entertainment[.]" Id. at 3, ¶16. "Plaintiff suffered an anxiety attack when learning upon the non-consensual broadcast of the arrest and had his left shoulder broken by Williamson County Jail Staff as a result of the panic attack." Id. at 3, ¶17. "Plaintiff was then strapped to an immobilized chair for hours, having his blood drawn while strapped to a chair with a broken shoulder for suffering an anxiety attack." Id.

**\*4**  "The criminal charges associated with [p]laintiff's driving while intoxicated arrest were dismissed for insufficient evidence on or around April 25, 2022." Compl. at 4, ¶18. Plaintiff initiated a civil lawsuit against Williamson County in the United States District Court for the Western District of Texas. See id.; see also Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021).

"Plaintiff first had been an acquaintance of Scott Heggelke, at all times relevant to this lawsuit, owner of Defendant's Despos LLC and Caffe Rustica, since graduating high school in the same class" in 2008.[7] Compl. at 2, ¶8. "[O]n or around July 2021[,]" "[p]laintiff and Scott Heggelke entered into a month to month oral lease agreement for an apartment in Lake Placid, New York[.]" Id. at 4, ¶19. "Plaintiff was employed by Affiliated Enterprise Solutions, LLC at this time in July 2021," and his employment continued "until on or around August 2022." Id. at 4, ¶20. Additionally, Heggelke "presented situations to [p]laintiff where a dishwasher was not available and asked [p]laintiff for assistance when no other dishwasher was available." Id. at 4, ¶21. "Plaintiff obliged in what he considered helping a high school friend" and, thus, he "would [also] work at Caffe Rustica, LLC at times [Heggelke's] dish washer was unavailable." Id.

[7]    Plaintiff and Heggelke graduated from West Genesee High School in 2008. See Compl. at 2, ¶10. "Scott Heggelke's father is Scott K. Heggelke, current Skaneatelas, New York Chief of Police and a veteran of the New York State Police for more than three decades." Id. at 2-3, ¶11. "Scott Heggelke's brother is Jason Heggelke, a current New York State Trooper." Id. at 3, ¶12.

"On or around May 2022, [p]laintiff began [also] working at Despos, LLC d/b/a Dunny's, a restaurant in Lake Placid, New York, in addition to employment for Affiliated Enterprise Solutions, LLC and pursuing other self-employment opportunities." Compl. at 4, ¶22. Heggelke and Eden Elkasasny owned Despos, LLC d/b/a Dunny's. See id. at 2, ¶¶8-9. "When starting employment at Despos LLC, Eden Elkasasny ... incorrectly entered [p]laintiff's bank account information into the payroll system." Id. at 4, ¶23. "Even though [p]laintiff provided the correct banking information, [p]laintiff was not 'on the books' during the first week of employment, due to error by ... Eden Elkasasny." Id. at 4-5, ¶24. "Upon information and belief, this error was intentionally made to violate [p]laintiff's employment rights." Id. at 5, ¶25.

"On or around November 16, 2022, [p]laintiff was asked to work at Caffe Rustica, LLC after Scott Heggelke told [p]laintiff that his previous dishwasher quit and needed immediate assistance." Compl. at 5, ¶26. "Plaintiff asked Caffe Rustica, LLC owner Scott Heggelke to make sure [p]laintiff was 'on the books' to ensure employer rights." Id. at 5, ¶27. "Instead of taking immediate action, [Heggelke] did not put [p]laintiff on the books as requested by [p]laintiff." Id. at 5, ¶28. "Plaintiff left on the job on the same night after [Heggelke] failed to take action on [p]laintiff's requests which left [p]laintiff dangerously liable for any injury incurred on the job." Id. at 5, ¶29.

"In February 2023, [p]laintiff and Scott Heggelke met regarding the back payment in rent regarding [p]laintiff's lease with Scott Heggelke." Compl. at 5, ¶30. "At Scott Heggelke's request, [p]laintiff met at Starbucks in Lake Placid, New York in February 2023."[8] Id. "During the discussion at Starbucks regarding rent payment and how to proceed moving forward, Scott Heggelke got up and walked out of the discussion with [p]laintiff." Id. at 5, ¶31. "Scott Heggelke evicted [p]laintiff in April 2023."[9] Id. at 5, ¶32. "Dunny's closed permanently in June 2022." Id. at 5, ¶34.

[8]    "During this meeting, [p]laintiff told Scott Heggelke how he was given medication for schizophrenia by Citizen Advocates, Inc. despite not being diagnosed with such a condition in January 2022." Compl. at 7-8, ¶54. "A person

known to both Scott Heggelke and [p]laintiff told [p]laintiff on or around March 2023 that Scott Heggelke told him he was diagnosed with schizophrenia." Id. at 8, ¶55. "Thus, upon information and belief, Scott Heggelke made the statement that [p]laintiff was diagnosed with schizophrenia although it was not true." Id. at 8, ¶56.

9    "The eviction is awaiting a decision from Essex County, New York County Court Judge Richard Mayer (CV23-0321)." Compl. at 5, ¶33.

### C. Analysis

**\*5** The undersigned has liberally construed plaintiff's allegations in light of his pro se status. See, e.g., Torres v. Carry, 800 F. Supp. 2d 577, 582 (S.D.N.Y. 2011) ("[W]here, as here, a party appears pro se, courts must construe pro se pleadings broadly and interpret them 'to raise the strongest arguments that they suggest.' ") (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996), and citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). As asserted in his complaint, plaintiff brings this action against Despos, LLC; Caffe Rustica, LLC; Scott Heggelke; and Eden Elkasasny, [10] pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq. See generally Compl. Plaintiff also brings a state law tort claim against Scott Heggelke for defamation. See id. at 7-8.

10    Although plaintiff makes references to "Essex County Defendant" and "Lake Placid Defendant" within his complaint, these references appear to be typographical errors as plaintiff has a separate, unrelated case pending against Essex County and the Village of Lake Placid. Compl. at 9, ¶64; see Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023). He does not appear to seek to pursue any claims against Essex County or Lake Placid in this action. See generally Compl.

### 1. FLSA Claims

Congress enacted the FLSA to "protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being.' " Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 243 (2d Cir. 2011) (quoting 29 U.S.C. § 202(a)). "In furtherance of this goal, the FLSA imposes numerous 'wage and hour' requirements, including an overtime provision that requires employers to pay non-exempt employees time-and-a-half for each hour worked in excess of forty hours per week." Nqadolo v. Care at Home, LLC, No. 3:22-CV-612 (KAD), 2024 WL 1330761, at *6 (D. Conn. Mar. 28, 2024) (citing 29 U.S.C. § 207(a)(1)); see Helix Energy Sols. Grp., Inc. v. Hewitt, 598 U.S. 39, 44 (2023). "If an employer violates the FLSA's wage provisions, then the employer is liable for any unpaid compensation." Nqadolo, 2024 WL 1330761, at *6 (citing 29 U.S.C. § 216(b)).

"The FLSA also imposes certain record keeping requirements on employers, mandating that they 'keep and preserve' certain records regarding 'wages, hours, and other practices of employment.' " Whatley v. Phillips, No. 2:22-CV-03528 (RMG/MGB), 2024 WL 2702556, at *3 (D.S.C. May 6, 2024) (quoting 29 U.S.C. § 211(c), and 29 C.F.R. § 516.5), report and recommendation adopted, 2024 WL 2786779 (D.S.C. May 29, 2024). [11] Specifically, "FLSA § 215 makes it 'unlawful' to violate the record keeping provision set forth in FLSA § 211(c)." Ayala v. Looks Great Servs., Inc., No. 14-CV-6035 (ADS/SIL), 2015 WL 4509133, at *6 (E.D.N.Y. July 23, 2015). However, "[t]hough a violation is 'unlawful,' courts have repeatedly found that the FLSA does not authorize employees to bring a private action against an employer for failure to abide by the record-keeping requirements of [§] 211(c)." Id. "Rather, that authority is vested exclusively with the Secretary of Labor." Id. (citing Elwell v. Univ. Hospitals Home Care Servs., 276 F.3d 832, 843 (6th Cir. 2002) ("Under 29 U.S.C. § 216(b), an employee may bring a private action against an employer for unpaid overtime or minimum wages. This provision does not authorize employee suits for violations of the FLSA's recordkeeping requirements. Authority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor.")) (additional citations omitted); see Bi v. Xia, No. 3:18-CV-23 (JAM), 2023 WL 4684828, at *7 (D. Conn. July 21, 2023) ("§ 211(c) of the FLSA requires covered employers to 'make, keep and preserve ... records' of

their employees. But '[t]here is no private right of action to enforce 29 U.S.C. § 211(c).' ") (quoting Fuk Lin Pau v. Jian Le Chen, No. 3:14-CV-841 (JBA), 2015 WL 6386508, at *6 (D. Conn. Oct. 21, 2015)).

11    "Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder." 29 U.S.C. § 211(c).

**6** Here, plaintiff specifically alleges that "[t]he records kept by Despos, LLC, Scott Heggelke and Eden Elkasasny are not in compliance of 29 U.S.C. § 211(c)." Compl. at 6, ¶39. Plaintiff asserts that his "requests to get accurate employment records and confirmation of the employment start date and end date have gone without answer," as Heggelke and Elkasasny "are unable to provide employment records because they are in violation of the [FLSA]." Id. at 6, ¶¶40-41. Similarly, with regard to his employment at Caffe Rustica, plaintiff claims that he "asked to be added to payroll and be afforded employment protection under State law"; yet Caffe Rustica, Heggelke, and Elkasasny "did not maintain records of [his] employment." Id. at 7, ¶¶46-47. Plaintiff claims that "by not keeping accurate records pursuant to Federal law, [he] has been damaged" by Despos, Caffe Rustica, Heggelke, and Elkasasny. Id. at 7, ¶49.

Even liberally construing plaintiff's allegations, he fails to state a claim under the FLSA. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)). The undersigned notes that plaintiff does not allege that he " 'is owed unpaid minimum wages, or unpaid overtime compensation as a result of a minimum-wage or overtime violation.' " Jordan v. Dep't of Correction, No. 3:23-CV-855 (VAB), 2023 WL 6541585, at *12 (D. Conn. Oct. 6, 2023) (quoting Aguila v. Corp. Caterers II, Inc., 199 F. Supp. 3d 1358, 1359 (S.D. Fla. 2016), aff'd sub nom. Aguila v. Corp. Caterers IV, Inc., 683 F. App'x 746 (11th Cir. 2017)); see Lewis v. Affiliated Enter. Sols., LLC, No. 8:24-CV-61 (BKS/DJS), 2024 WL 2058538, at *2 (N.D.N.Y. Feb. 20, 2024) (dismissing the plaintiff's FLSA claim upon § 1915 review because the plaintiff did "not claim, for example, that he was not paid the required minimum wage or was denied overtime benefits, common [FLSA] claims"), report and recommendation adopted sub nom. Lewis v. Affiliated Enter. Sols., LLC, 2024 WL 1652460 (N.D.N.Y. Apr. 17, 2024). [12] Instead, plaintiff claims that Despos, Caffe Rustica, Heggelke, and Elkasasny violated FLSA's recordkeeping provision by failing to adequately "make, keep, and preserve" his employment records. 29 U.S.C. § 211(c); see Compl. at 6-7. However, as discussed above, "there is no private right of action for the failure to keep required employment records" under the FLSA. Vengurlekar v. Silverline Techs., Ltd., 220 F.R.D. 222, 230 n.8 (S.D.N.Y. 2003); see Cunningham v. Elec. Data Sys. Corp., 579 F. Supp. 2d 538, 543 (S.D.N.Y. 2008) ("[T]here is no private right of action to enforce ... the FLSA's record-keeping provisions"); see also Mariano v. Town of Orchard Park, No. 09-CV-916S, 2011 WL 5979261, at *3 (W.D.N.Y. Nov. 27, 2011) ("[The plaintiff] cannot assert a stand-alone cause of action for a record keeping violation.") (citations omitted); Berndt v. City of Los Angeles, No. CV 11-08579 (GAF/AJWX), 2012 WL 12920839, at *5 (C.D. Cal. May 31, 2012) ("Only the Secretary of Labor is authorized to bring suit for violations of the [FLSA]'s record-keeping provisions [and v]irtually every court that has addressed the issue has found that this authorization does not extend to private plaintiffs."). Thus, it is recommended that plaintiff's FLSA claims against Despos, Caffe Rustica, Heggelke, and Elkasasny be dismissed.

12    If plaintiff were seeking to allege "a violation of the FLSA's minimum wage and/or overtime provisions, [he would have to] allege that [he was] employed by the defendant[s]; that [he was a] covered employee[ ]; that [he was] either not compensated for all hours worked at a rate equal to or greater than the applicable minimum wage and/or worked more than forty-hours per week and [was] not compensated at a rate of 1.5 times [his] regular rate for each hour worked above forty hours per workweek; and that no statutory exemptions apply." Whatley, 2024 WL 2702556, at *4 (citations omitted). However, plaintiff has not made any such allegations in his complaint. See generally Compl.

## 2. Subject Matter Jurisdiction

**\*7** Given the foregoing, plaintiff's purported complaint fails to establish this Court's subject matter jurisdiction. See Compl. Subject matter jurisdiction can be established either through federal question or diversity jurisdiction. Under 28 U.S.C. § 1331, a case "arising under the Constitution, laws, or treaties of the United States[ ]" is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State, and the amount in controversy is more than $75,000, is a diversity case. If the Court has subject matter jurisdiction over federal claims, the Court may choose to exercise supplemental jurisdiction over any state law claims. See 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ...").

"[D]ismissals for lack of subject matter jurisdiction 'must be without prejudice, rather than with prejudice.' " Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1074 (2d Cir. 2021) (quoting Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54 (2d Cir. 2016)). "When subject matter jurisdiction is lacking, 'the district court lacks the power to adjudicate the merits of the case,' and accordingly 'Article III deprives federal courts of the power to dismiss [the] case with prejudice.' " Id. (citation omitted); see Katz v. Donna Karan Co., LLC, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]"); see also Hamza v. Sollenberger, No. 1:23-CV-355 (MAD/CFH), 2023 WL 7001443, at \*6 (N.D.N.Y. Sept. 13, 2023) (dismissing the plaintiff's complaint without prejudice where the plaintiff failed to establish subject matter jurisdiction), report and recommendation adopted, 2023 WL 8108606 (N.D.N.Y. Nov. 21, 2023).

Plaintiff's civil cover sheet indicates the basis for jurisdiction of this matter is federal question jurisdiction. See Dkt. No. 1-1 at 1. However, plaintiff has failed to state a claim for relief under the FLSA; therefore, he has not established federal question jurisdiction. See generally Compl.; see also supra Subsection II.C.1. Similarly, plaintiff has not purported to sue a citizen of a different state; therefore, diversity jurisdiction does not exist. [13] See Compl. 1-2. Accordingly, as plaintiff has not established this Court's jurisdiction, it is recommended that his complaint be dismissed without prejudice. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

[13]   Plaintiff states that Despos and Caffe Rustica are located in Lake Placid, New York, and Heggelke and Elkasasny also reside in Lake Placid, New York. See Compl. at 1-2.

## 3. State Law Claim

Plaintiff also seeks to bring a state law defamation claim against Heggelke for making "defamatory statements" that "[p]laintiff was diagnosed with schizophrenia" even though "it was not true." See Compl. at 7-8.; see also supra note 8. "Although, generally, this Court has the discretion to exercise its supplemental jurisdiction to review state law claims in some cases, where there is no meritorious federal claim before the Court, the district court should decline to exercise its supplemental jurisdiction to review any related state law claims." Passero v. Schulz, No. 1:17-CV-1296 (TJM/CFH), 2018 WL 2926292, at \*4 (N.D.N.Y. Feb. 1, 2018) (citing Block v. First Blood Assocs., 988 F.2d 344, 351 (2d Cir. 1993), and Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994)), report and recommendation adopted sub nom. Passero v. Schultz, 2018 WL 2926295 (N.D.N.Y. June 7, 2018); see Lawler v. ViaPort New York, LLC, No. 1:19-CV-548 (GLS/CFH), 2019 WL 2717900, at \*3 (N.D.N.Y. June 28, 2019) (recommending, upon § 1915 review, that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claim where the plaintiff failed to "set forth a valid federal law claim"), report and recommendation adopted, 2019 WL 6134180 (N.D.N.Y. Nov. 19, 2019).

**\*8**  Thus, as there exists no valid federal claim, it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claim. See Passero, 2018 WL 2926292, at *4 ("As plaintiff's complaint currently fails to demonstrate the involvement of a federal question, and, thus, fails to demonstrate this Court's jurisdiction, it is recommended that this Court also decline to exercise jurisdiction over plaintiff's potential state law claim.") (citing Kaminski v. Commissioner of Oneida Cnty. Dept. of Soc. Services, 804 F. Supp. 2d 100, 107 (N.D.N.Y. 2011), and 28 U.S.C. § 1367(c)(3)).

### III. Leave to Amend

Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once" "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). "[L]ack of subject-matter jurisdiction is generally viewed as a substantive defect." Planck v. Schenectady Cnty., No. 1:12-CV-0336 (GTS/DRH), 2012 WL 1977972, at *6 (N.D.N.Y. June 1, 2012).

As plaintiff has not established subject matter jurisdiction, it is recommended that his complaint be dismissed without prejudice. [14] , [15]  See McKie v. Kornegay, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) (summary order) ("A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case.' ") (quoting Carter, 822 F.3d at 54-55). However, as "leave to amend would be futile as the defects in plaintiff's claims cannot be cured with a better pleading as the problems are substantive," it is further recommended that his complaint be dismissed without leave to amend. Vazquez v. Times Union Newspaper, No. 1:21-CV-1359 (DNH/CFH), 2022 WL 837474, at *4 (N.D.N.Y. Mar. 1, 2022) (citing Cuoco, 222 F.3d at 112, and Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)), report and recommendation adopted, 2022 WL 833370 (N.D.N.Y. Mar. 21, 2022); see, e.g., Koziel v. City Ct. of Yonkers, 351 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming sua sponte dismissal of the pro se plaintiff's complaint without leave to amend due to lack of subject matter jurisdiction and, alternatively, for failure to state a claim, finding "no possibility in this case that even an amended complaint would succeed in stating a valid claim"); Shidagis v. Citgo Gas Station, No. 3:23-CV-0192 (DNH/ML), 2023 WL 2634067, at *4 (N.D.N.Y. Mar. 6, 2023) (recommending dismissal without prejudice and without leave to amend, because the plaintiff failed to establish subject matter jurisdiction and "leave to amend would be futile"), report and recommendation adopted, 2023 WL 2631890 (N.D.N.Y. Mar. 24, 2023).

[14]  As discussed, is recommended that dismissal be without prejudice solely due to this Court's lack of subject matter jurisdiction. See supra Subsection II.C.2. In the alternative, for the reasons discussed supra, it is recommended that plaintiff's complaint be dismissed with prejudice for failure to state a claim upon which relief may be granted. See discussion supra Subsection II.C.1; see also Wallace v. Conroy, 945 F. Supp. 628, 639 (S.D.N.Y. 1996) ("[A] court should exercise its discretion to dismiss with prejudice 'where a plaintiff is unable to allege any fact sufficient to support his claim.' ") (quoting Cortec, 949 F.2d at 48-49); Pittman v. Johnson, No. 1:22-CV-1372 (GTS/ML), 2023 WL 3260189, at *4 n.4 (N.D.N.Y. Mar. 28, 2023) (recommending dismissal of the plaintiff's claim without prejudice and without leave to replead for lack of subject matter jurisdiction, and alternatively recommending that the plaintiff's claim be dismissed for failure to state a claim upon which relief may be granted), report and recommendation adopted, 2023 WL 3253865 (N.D.N.Y. May 4, 2023).

[15]  Specifically, it is recommended that the dismissal be without prejudice to plaintiff's ability to commence an action in an appropriate state court, should he wish to do so. The undersigned makes no comment as to the success of claim, or the ability to bring such claim, in state court. See Vazquez, 2022 WL 837474, at *4 n.5.

### IV. Conclusion

**\*9** **WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against Despos, LLC, Caffe Rustica, LLC, Scott Heggelke, and Eden Elkasasny be **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND** for lack of subject matter jurisdiction; and it is further

**RECOMMENDED**, that, in the alternative, plaintiff's claims against Despos, LLC, Caffe Rustica, LLC, Scott Heggelke, and Eden Elkasasny be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** for failure to state a claim upon which relief can be granted; [16] and it is

[16]      See discussion supra note 14.

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [17]

[17]      If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 2846991

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by   Lewis v. Despos, LLC,   2nd Cir.,   August 16, 2024

2024 WL 3371063
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

DESPOS, LLC, et al., Defendants.

8:24-cv-00079 (AMN/CFH)
|
Signed July 11, 2024

**Attorneys and Law Firms**

SCOTT PHILLIP LEWIS, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff, pro se.

**ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

 **\*1**  On January 17, 2024, Plaintiff *pro se* Scott Phillip Lewis filed a complaint alleging violations of the Fair Labor Standards Act ("FLSA") and New York State law against Defendants Despos, LLC d/b/a Dunny's, Caffe Rustica, LLC, Scott Heggelke, and Eden Elkasasny ("Defendants"). Dkt. No. 1 ("Complaint"). Plaintiff sought and was granted leave to proceed *in forma pauperis.* Dkt. Nos. 2, 7.

This matter was referred to United States Magistrate Christian F. Hummel, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on June 5, 2024, recommended that the Complaint be dismissed, either without prejudice and without leave to amend for lack of subject matter jurisdiction, or with prejudice and without leave to amend for failure to state a claim upon which relief can be granted. Dkt. No. 7 ("Report-Recommendation"). Magistrate Judge Hummel advised that pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 18. [1] After requesting and receiving an extension of time to file objections, Plaintiff did so. Dkt. Nos. 8-10.

[1]   Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

For the reasons set forth below, the Court rejects Plaintiff's objections and adopts the Report-Recommendation in its entirety.

**II. STANDARD OF REVIEW**

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue,* 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)).

If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 08-cv-322, 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

**\*2** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

The Court adopts those aspects of the Report-Recommendation to which no party has raised a specific objection, finding no clear error therein, including the background and the legal framework set forth in the Report-Recommendation, familiarity with which is presumed for purposes of this decision.

Construed liberally, Plaintiff's submission objecting to the Report-Recommendation raises four arguments: (i) Magistrate Judge Hummel erred in finding that Plaintiff had failed to state a claim under the FLSA; (ii) Plaintiff should receive the opportunity to amend the Complaint; (iii) Plaintiff's state law claims should be reviewed *de novo*; and (iv) Plaintiff's requested summonses should have been issued when he commenced this action in January 2024. Dkt. No. 10, at 2-5. The Court addresses each argument in turn.

As detailed at length in the Report-Recommendation, Plaintiff's FLSA claim is that Defendants violated a recordkeeping provision of the FLSA. Dkt. No. 7 at 9-13; *see also* 29 U.S.C. § 211(c). Magistrate Judge Hummel analyzed numerous court decisions in determining that no private right of action exists for such a claim. *See, e.g., Ayala v. Looks Great Servs., Inc.*, No. 14-cv-6035, 2015 WL 4509133, at *6 (E.D.N.Y. July 23, 2015) ("[C]ourts have repeatedly found that the FLSA does not authorize employees to bring a private right of action against an employer for failure to abide by the record-keeping requirements of [FLSA] Section 211(c).")). Plaintiff's objection is that the legal authority upon which Magistrate Judge Hummel relied is from courts that "misapplied the law with broken logic." Dkt. No. 10 at 2. Plaintiff cites no caselaw in support of his position. Plaintiff goes on to argue, in conclusory fashion, that he has stated a claim under Section 211(c) and that this Court has jurisdiction over such a claim. Following *de novo* review, the Court concludes that the Report-Recommendation correctly found that Plaintiff failed to state a valid FLSA claim and, further, that the absence of a federal claim divests this Court of subject matter jurisdiction in this non-diverse action. Dkt. No. 7 at 9-15; *see also* 28 U.S.C. § 1332.

Plaintiff's second argument is that "there has always [sic] an intention to amend the original complaint with additional context" and that he should now receive the opportunity to amend. Dkt. No. 10 at 4. Plaintiff does not specify the nature of the "additional context," nor does the docket reflect any request from Plaintiff to amend the Complaint. Following *de novo* review, the Court

concludes that the Report-Recommendation correctly found that leave to amend would be futile given the absence of subject matter jurisdiction. Dkt. No. 7 at 15-17.

**\*3** Plaintiff's third argument is that his "state law claims were erroneously not properly analyzed." Dkt. No. 10 at 5. Following *de novo* review, the Court concludes that supplemental jurisdiction is not appropriately exercised here, for the reasons correctly set forth in the Report-Recommendation. Dkt. No. 7, 14-15; *see also* 28 U.S.C. 1367.

Plaintiff's final argument concerns the issuance of his requested summonses. Dkt. No. 10 at 3. However, the summonses were not addressed within the Report-Recommendation. *Compare* Dkt. No. 7, *with* Dkt. Nos. 5-6. Because the summonses are not a finding or recommendation to which objections can be made, and because the issuance of summonses is unnecessary in light of this Court's determination, this argument is rejected as moot. [2]

[2]      Similarly, the Court denies as moot Plaintiff's pending letter request regarding the summonses. Dkt. No. 11.

Accordingly, the Report-Recommendation is adopted in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 7, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED without prejudice and without leave to amend**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules. [3]

[3]      The Clerk shall also provide Plaintiff with copies of all unreported decisions herein.

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2024 WL 3371063

---

**End of Document**                                                                                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4751552
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

SAIO BARZEE, Plaintiff,

v.

AARON M. WISON, JR., et al., Defendants.

5:24-CV-1237 (DNH/MJK)
|
Filed 11/12/2024

**Attorneys and Law Firms**

SAIO BARZEE, Plaintiff, pro se

**ORDER and REPORT-RECOMMENDATION**

Mitchell J. Katz U.S. Magistrate Judge

**\*1** TO THE HONORABLE DAVID N. HURD, U.S. DISTRICT JUDGE:

The Clerk has sent to the court for review a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Saio Barzee. (Dkt. Nos. 1, 6).

## I. IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Iqbal*, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II. Complaint

**\*2**  Plaintiff's complaint concerns events alleged to have occurred between September and November 2023, giving rise to his underlying arrest and criminal prosecution. Plaintiff, a parolee, was hired and began working at Wendy's in September of 2023. (Complaint ("Compl.") at ¶ 1). Plaintiff alleges that, during the course of his employment at Wendy's in September and October 2023, he endured ongoing verbal and sexual harassment from his co-workers, including defendants Santina Rivera, Kari Wheeler, Michelle Murphy, Chris Gordon, Louis Rivera Jr. and Emily Roe. (*See generally* Compl. at ¶¶ 2-19). Plaintiff also describes offending conduct by non-Wendy's employee Aaron M. Wilson, Jr., Santina Rivera's boyfriend. (*See* Compl. at ¶ 16).

On or around October 29, 2023, plaintiff got into a verbal altercation with his co-worker, defendant Kari Wheeler. (Compl. at ¶¶ 20-21). In response, defendant Santina Rivera, Ms. Wheeler's sister, "texted" Wendy's manager defendant Michelle Murphy [1] and informed her that Ms. Wheeler and plaintiff were "threatening each other with violence and gun violence." (*Id.* at ¶ 22). Plaintiff thereafter took a break outside the Wendy's store, at which time he noticed a suspicious dark colored vehicle that he felt to be threatening. (*Id.* at ¶¶ 23-24). Plaintiff alleges that he attempted to approach the vehicle, in which he "noticed a firearm and some weed smoking." (*Id.* at ¶ 24). Ms. Murphy then approached plaintiff and convinced him to go inside so she could "just simply talk to him and that there didn't have to be any problem." (*Id.* at ¶¶ 24-26).

[1]    Defendant Michelle Murphy is Kari Wheeler and Santina Rivera's mother. (Compl. at ¶ 8).

After returning to the inside of the store and speaking to Ms. Murphy, plaintiff "started to go back to work only to then ... be harassed again." (Compl. at ¶ 28). Specifically, plaintiff alleges that he was verbally harassed by a "Caucasian kid in his mid-twenties" at the cashier area of the store, and then later, after leaving his shift for the night, by other unidentified individuals outside of the store. (*See id.* at ¶¶ 28-32).

After that night, plaintiff informed his parole officer that "he was not going to go back to Wendy's because he did not feel welcomed." (Compl. at ¶ 33). Plaintiff alleges that he made "a couple more stops to Wendy's after that[,] but never got into any physical altercation ... nor did [he] approach the defendants." (*Id.*). Plaintiff states that he went "simply to see if he could get the license plate of the people that had harassed him that night so that he could get a potential identification and or [sic] confirmation of the potential threat[.]" (*Id.* at ¶ 33).

Plaintiff then states that, on November 15, 2023, he went to Wendy's again "to inform the defendants that he was either going to commence with filing criminal charges against them and or [sic] file a lawsuit for the unjustifiable slander of his character." (Compl. at ¶ 33). Plaintiff thereafter alleges that he was "wrongfully arrested" that night. (*Id.* at ¶ 34). Although plaintiff generally refers to the "transactions" that occurred that night leading to his arrest, he conveniently fails to provide any detail surrounding the circumstances. According to contemporaneously published news articles, [2] Cicero Police responded to Wendy's that evening for a report of an ex-employee threatening to kill employees. [3] The articles further report that police were advised that the ex-employee displayed a handgun and made multiple threats to kill people before leaving the scene.

2    The Court may take judicial notice "of news articles discussing the conduct raised in the complaint[.]" *Stewart v. Loring Ests. LLC*, No. 18-CV-2283, 2020 WL 3002363, at *9 (E.D.N.Y. Feb. 26, 2020), *report recommendation adopted*, 2020 WL 1231783 (E.D.N.Y. Mar. 13, 2020) (quoting *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 397 (S.D.N.Y. 2011)). It should be emphasized that the court does not accept the articles as evidence of the truth of the matters therein asserted.

3    *See https://cnycentral.com/news/local/paroled-ex-employee-arrested-after-threatening-wendys-staff-in-cicero* (last visited Nov. 4, 2024); https://cnycentral.com/news/local/paroled-ex-employee-arrested-after-threatening-wendys-staff-in-cicero (last visited Nov. 4, 2024); https://www.localsyr.com/news/local-news/ex-employee-shows-up-at-cicero-wendys-threatens-to-kill-current-employees/ (last visited Nov. 4, 2024).

**\*3** The remainder of plaintiff's complaint alleges the culpable behavior of the various defendants to the extent they are alleged to have violated his constitutional rights with respect to the October 29th and November 15th incidents. Specifically, plaintiff asserts that defendants Aaron M. Wilson, Jr., Kari Wheeler, Chris Gordon, and Santina Rivera lied and/or perjured themselves in the course of providing statements to, and otherwise assisting the responding law enforcement officers, during the investigation leading to plaintiff's arrest on November 15th. (*See* Compl. at ¶¶ 34-40).

Plaintiff further alleges the violation of his constitutional rights by the various law enforcement officers involved in the November 15th arrest and subsequent prosecution, including defendant Police Officers Ernes Merdanovic, Kyle Harrington, and John Baldini, as well as Sergeants ("Sgt.") Snell and Thomas Leo. For the sake of brevity, the court addresses the differing allegations against these officers in more detail in the analysis section.

Plaintiff next alleges that his defense attorney, defendant Susan C. Carey, "wrongfully deprived plaintiff of his ... right to testify at the grand jury[,]" "wrongfully failed to adequately communicate with the plaintiff[,]" and "failed to inform the plaintiff about relevant matters pertaining to his criminal case and of every stage of his criminal proceeding." (Compl. at ¶¶ 47-48).

Plaintiff states that defendant Michael Wright, a "parole revocation specialist," "wrongfully [brought] up new parole violation charges against the plaintiff on the same day as the plaintiff's schedule[d] final parole revocation hearing ... depriv[ing] the plaintiff of the opportunity to adequate[ly] prepare a defense against the [other] allegations brought up against him[.]" (Compl. at ¶ 50). Plaintiff further alleges that Michael Wright "wrongfully allow[ed] ... defendant Aaron M. Wilson Junior to view photographic evidence of the firearm recovered by [defendant P.O. Harrington ...]"; was "more wrongfully worried about convicting the plaintiff th[a]n he was to upholding justice ..."; "wrongfully attempted to influence plaintiff's attorney ... to coerce the plaintiff into accepting one of the maliciously framed offer[s] given by the board of parole ..."; and "knew that the administrative law judge was being extremely bias[ed] and failed to uphold justice by bringing cure to the prejudicial injuries being suffered by the plaintiff." (*Id.* at ¶¶ 51-54).

Finally, plaintiff alleges that defendant Tamara Danner, a firearm examiner, "violated his right to ... due process by way of forgery when the defendant wrongfully certified ... [and] presented falsified documentations which made it appear as if the firearm was indeed operable ... which ... was perjury[.]" (Compl. at ¶ 56).

## III. Private Party Defendants

### A. 42 U.S.C. § 1983 Claims

Plaintiff's § 1983[4] claims against defendants Wilson, Rivera, Wheeler, Murphy, Gordon, Rivera Jr., and Roe should be dismissed. To state a claim under Section 1983, a litigant must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). To state a claim for a Section 1983 conspiracy involving a private party, "a plaintiff must allege '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional

injury; and (3) an overt act done in furtherance of that goal causing damages.' " *Knopf v. Esposito*, 803 F. App'x 448, 452–53 (2d Cir. 2020) (quoting *Ciambriello*, 292 F.3d 307, 324–25 (2d Cir. 2002). A private actor also acts under the color of state law "when the private actor is a willful participant in joint activity with the State or its agents." *Betts v. SHearman*, 751 F.3d 78, 84 (2d Cir. 2014) (internal quotation marks and citation omitted).

4    The Court recognizes that a defamation claim can be brought as a civil rights violation pursuant to 42 U.S.C. § 1983 "when a plaintiff can demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest.' " *Gerrard v. Burns*, No. 7:14-CV-1235 (DNH), 2015 WL 1534416, at *3 (N.D.N.Y. April 6, 2015). "The action is one for violation of a liberty or property interest protected by due process." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). Thus, to the extent plaintiff asserts a cause of action for defamation under the First Amendment (*See* Compl. at p. 16-17), which is typically raised as a defense in such a claim, it does not provide a basis for any § 1983 claim as pled.

 **\*4** A complaint that contains "only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights [is] properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (internal quotation marks omitted); *see also Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 381–82 (E.D.N.Y. 2021) ("[T]he complaint must allege facts that plausibly suggest a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."). And while "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence," *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (internal quotation marks and citation omitted), the plaintiff is still required to allege facts beyond "conclusory, vague, or general allegations" to state a claim "that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights," *Ciambriello*, 292 F.3d at 325.

Here, plaintiff fails to allege any facts demonstrating that the private defendants acted in concert with or conspired with the law enforcement officers affecting his arrest. Liberally construed, plaintiff alleges that these private defendants were responsible for harassing him at his place of work, and reporting false information to the police about the events that occurred on November 15 th . A private party's calling or summoning police officers does not constitute joint action with the officers that is actionable under § 1983. *See Rodriguez v. Winski*, 973 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) (finding that a private party "summoning police or requesting that police take action ... simply does not suffice to constitute joint action or to convert the private party into a state actor"); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (private party's "provision of background information to a police officer does not by itself make [the private party] a joint participant in state action under Section 1983"). This is the case even if the private defendants' reports to the law enforcement officers were, in fact, false. *See Rodriguez*, 973 F. Supp. at 422 ("[E]ven assuming that [defendant] had deliberately provided false information to police, such provision alone is not sufficient" to make him a state actor."); *Vazquez v. Combs*, No. 04-Civ-4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("[M]erely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation.").

To the extent that plaintiff alleges defendant Wilson Jr. provided false testimony at plaintiff's final parole revocation hearing and during grand jury proceedings, this claim fails on multiple bases. First, an allegation that a private individual gave false testimony in a judicial proceeding, without more, does not plausibly allege that the individual was acting under color of state law. *See Briscoe*, 460 U.S. at 329–30 ("It is beyond question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.' "); *Gordon v. City of New York*, No. 10–CV–5148, 2012 WL 1068023, at *12 (E.D.N.Y. Mar. 29, 2012) (dismissing Section 1983 claim based on private individual's allegedly false grand jury testimony); *see also Flores v. Levy*, No. 07–CV–3753, 2008 WL 4394681, at *7 (E.D.N.Y. Sept. 23, 2008) ("[T]he fact that [the private actor] ... perjured herself as a witness at ... trial does not transform her into a state actor."). Moreover, a witness in a judicial proceeding is entitled to absolute immunity against claims for damages arising out of his or her testimony. *See Briscoe*, 460 U.S. at 334 ("At least with respect to private witnesses, it is clear that § 1983 did not abrogate the absolute immunity existing at common law."); *see also San Filippo v. U.S. Trust Co. of N.Y., Inc.*, 737 F.2d 246, 254 (2d Cir. 1984) (extending *Briscoe's* holding to grand jury testimony); *accord Gordon*, 2012 WL 1068023, at *12.

**\*5** Accordingly, plaintiff's § 1983 claims against these private defendants should be dismissed for failure to state a claim and/or immunity from suit.


### B. State Law Claims [5]

[5]      This court is recommending that certain of plaintiff's federal claims survive *sua sponte* review. (*See, infra,* p. 30). District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a) (2000). Accordingly, the court will analyze those state law claims raised by plaintiff in his complaint, to the extent that the district court accepts my recommendation and recognizes supplemental jurisdiction.

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Hogan v. Herald Co.*, 84 A.D.2d 470, 474 (4th Dep't 1982), *aff'd* 58 N.Y.2d 630 (N.Y. 1982). "Generally, spoken defamatory words are slander; written defamatory words are libel." *Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001).

"Under New York law a [libel] defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). In addition, "[u]nder New York law, to state a cause of action for slander, the plaintiff must allege facts plausibly suggesting (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) that causes either special harm or constitutes slander per se, and (7) that is not protected by privilege." *Ryle v. Rehrig Pac. Co.*, 19-CV-1478, 2020 WL 6196144, at *8 (N.D.N.Y. Oct. 22, 2020) (citing *Albert*, 239 F.3d at 265-66). Slander per se includes "statements (i) charging plaintiff with a serious crime; [and] (ii) that tend to injure another in his or her trade, business or profession." *Whelan v. Cuomo*, 220 A.D.3d 979, 981 (2d Dep't 2023) (quoting *Liberman v. Gelstein,* 80 N.Y.2d 429, 435 (1992)).

Plaintiff's claim for libel against defendant Aaron M. Wilson Jr. for the testimony he gave at plaintiff's criminal proceedings (*see* Compl. at ¶¶ 61-63) should be dismissed for failure to state a claim. Moreover, under New York law, "[i]t is well-settled that statements made in the course of litigation are entitled to absolute privilege." *TRB Acquisitions LLC v. Yedid*, 215 A.D.3d 40, 43 (1st Dep't 2023) (quoting *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015)).

Plaintiff further asserts a claim for slander per se against defendants Santina Rivera, Aaron M. Wilson Jr., and Luis Rivera Jr. for referring to plaintiff as a sex offender and a pedophile. (*See* Compl. at ¶¶ 14, 16, 57-58). These allegations further fail to state a claim. To the extent plaintiff alleges that these statements were made in conversations between him and the defendants (*see, e.g.,* Compl. at ¶ 14), such allegations do not amount to slander because they were not published to a third party. *See McCollum v. Baldwin*, 688 F. Supp. 3d 117, 128 (S.D.N.Y. 2023) ("Plaintiffs' defamation claims that are based on [the defendant's] private communications with [the plaintiff] ... are not actionable."). Moreover, it was not slander per se for defendant Wilson to "report" to defendant P.O. Merdanovic that plaintiff "was under the assumption that people were slandering his character[.]" (*See* Compl. at ¶ 58). Otherwise, as alleged plaintiff's allegations do not plausibly allege claims for defamation under New York Law.

**\*6** Accordingly, plaintiff's state law defamation claims should be dismissed for failure to state a claim.


### IV. <u>Law Enforcement Defendants</u>

Plaintiff explicitly declares in his complaint that he is not seeking to base his § 1983 claims against the defendant law enforcement officers on a cause of action for false arrest, but is "asserting that the cruel and unusual punishment being wrongfully inflicted upon the plaintiff ... are a violation of plaintiff's due process rights[.]" (Compl. at ¶¶ 75-79, 93). He also asserts claims of perjury, falsifying reports and obstructing justice against these defendants. (*Id.* at ¶¶ 64-68).

At the outset, the court notes that plaintiff's claims arising under the Eighth Amendment right to be free from cruel and unusual punishment should be dismissed. As a parolee at the time of his arrest, any claims plaintiff raised to this effect would be "appropriately analyzed under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment." *Porath v. City of New York*, No. 22-CIV-1302, 2023 WL 9197680, at *5 n. 3 (S.D.N.Y. Dec. 21, 2023), *report and recommendation adopted*, 2024 WL 127025 (S.D.N.Y. Jan. 11, 2024) (quoting *Stovall v. Wilkins*, No. 15 Civ. 2163, 2016 WL 5478509, at *3 (S.D.N.Y. Sept. 29, 2016)).

Moreover, plaintiff's claims against the defendant law enforcement officers as they relate to the revocation of his parole may not proceed. "An individual convicted of a crime may not bring a section 1983 suit for damages that 'necessarily impl[ies] the invalidity of his conviction or sentence ... unless [he] can demonstrate that the conviction or sentence has already been invalidated.' " *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 454 (E.D.N.Y. 2018) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)) (additional citations omitted). "*Heck's* limitation of section 1983 claims has come to be known as the 'favorable-termination' rule and applies to revocations of parole." *Opperisano*, 286 F. Supp. 3d at 454 (citing, *inter alia*, *Lee v. Donnaruma*, 63 Fed. App'x 39, 41 (2d Cir. 2003) ("Courts have applied *Heck* to prevent a state prisoner from bringing a section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside.")). "A parolee challenging a parole revocation must therefore demonstrate that his parole revocation has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Id.* at 455 (quoting *Heck*, 512 U.S. at 486-87) (additional citations omitted).

In this case, plaintiff has alleged that as a result of the defendants' conduct, he was sentenced to the "maximum amount of imprisonment (two years)" for violating his parole. (Compl. at ¶ 42). The complaint does not allege that the determination at his parole revocation hearing has since been invalidated. Accordingly, plaintiff's claims related to the violation of probation proceedings are barred by *Heck* and should be dismissed. [6] *See, e.g.*, *Robinson v. Wright*, No. 5:21-CV-1098, 2023 WL 6122882, at *2 (N.D.N.Y. Sept. 19, 2023) (dismissing plaintiff's Fourteenth Amendment due process claims concerning perjured testimony and material omissions during parole revocation hearing as barred by *Heck*); *Harris v. New York Div. of Parole*, No. 9:18-CV-1435(LEK/TWD), 2019 WL 1958017, at *4 (N.D.N.Y. May 1, 2019) ("Since success on Plaintiff's malicious prosecution and due process claims require him to prove the invalidity of his parole revocation, *Heck* bars those claims unless state authorities reversed the revocation.") (citation omitted).

[6]     Specifically, this includes plaintiff's claims that defendants P.O. Merdanovic and P.O. Harrington provided false testimony at his parole revocation hearing. (Compl. at ¶ 41).

**\*7** To the extent plaintiff's allegations may be construed to raise malicious prosecution claims against the law enforcement defendants, such claims should be dismissed. Claims for malicious prosecution require the plaintiff to show a favorable termination of the underlying criminal case against him. *See Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) ("[A] Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him."). Plaintiff affirmatively alleges in his complaint that he is a "pretrial detainee of [his] new pending case." (Compl. at p. 1). As plaintiff's criminal proceeding is allegedly ongoing, he necessarily cannot allege that it terminated in his favor. *See Sabino v. Port Auth. Police Dep't*, No. 21-CV-5731, 2021 WL 3914092, at *2 (S.D.N.Y. Sept. 1, 2021) (citing *Bayan v. Sikorski*, No. 17-CV-4942, 2021 WL 1163653, at *5 (S.D.N.Y. Mar. 26, 2021) ("Because 'favorable termination is an element of a malicious prosecution claim, a plaintiff cannot state a claim if the relevant criminal proceeding is pending.' ")).

A Section 1983 "fair trial" claim is a claim for civil damages for violations of a criminal defendant's due process rights. *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (quoting *Cone v. Bell*, 556 U.S. 449, 451 (2009)) ("The right to a fair trial [is] guaranteed to state criminal defendants by the ... Due Process Clauses [of the Fifth and Fourteenth Amendments, defined] ... largely through [ ]several provisions of the Sixth Amendment.") (citations and quotation marks omitted). A § 1983 claim for a violation of the right to a fair trial lies, *inter alia,* where a police officer "creates false information likely to influence a jury's

decision and forwards that information to prosecutors." *Ricciuti,* 124 F.3d at 130. Such a fair trial claim can be sustained "even if the officer had probable cause to arrest in the first place." *Abreu v. City of New York,* 04 CV 1721, 2006 WL 401651, at *6 (E.D.N.Y. Feb. 22, 2006) (citing *Jocks v. Tavernier,* 316 F.3d 128, 138 (2d Cir.2007)). A fair trial claim can also arise where police or prosecutors "withhold evidence that is 'material' to a criminal defendant's guilt or punishment." *McCaffrey,* 2013 WL 494025, at *10 (citing *Brady v. Maryland,* 373 U.S. 83, 87 (1963)). "A plaintiff need not have proceeded to a full trial on the merits in order to have an actionable section 1983 claim based on the denial of a fair trial." *Marom v. City of New York,* No. 15-CV-2017, 2016 WL 916424, at *9 (S.D.N.Y. Mar. 7, 2016) (citing *Ricciuti,* 124 F.3d at 127). To the extent plaintiff has raised allegations sounding in the violation of his right to a fair trial, the court will address each defendant in turn.

### A. P.O. Ernes Merdanovic

Plaintiff alleges that defendant P.O. Merdanovic "knew or should have known" that defendant Wilson Jr. was lying about the events that occurred on November 15th, but nevertheless "wrongfully filed the felony complaint which was later used as the accusatory instrument brought up against plaintiff." (Compl. at ¶ 35). However, plaintiff fails to plausibly allege what false information defendant Wilson Jr. provided to defendant P.O. Merdanovic that was ultimately put in his report, much less facts reasonably asserting how defendant P.O. Merdanovic should have known that said information was false. A claim asserting deprivation of a right to a fair trial cannot survive based only on broad and conclusory allegations that the officers created false narratives. *Marom,* 2016 WL 916424, at *9 (citing *Abdul-Rahman v. City of New York,* 10-CV-2778, 2012 WL 1077762, at *12 (E.D.N.Y. Mar. 30, 2012)). To this end, cursory pleadings are not sufficient to plausibly allege a claim for denial of the to a fair trial. *See, e.g., Hutchins v. Solomon,* No. 16-CV-10029, 2018 WL 4757970, at *16 (S.D.N.Y. Sept. 29, 2018) ("Conclusory statements that officers fabricated evidence do not suffice to state a claim for the denial of a fair trial."); *Longo v. Ortiz,* No. 15-CV-7716, 2016 WL 5376212, at *6 (S.D.N.Y. Sept. 26, 2016) (holding that the plaintiff failed to state denial of fair trial claim where he alleged "he was denied the right to a fair trial ... when the defendants fabricated evidence, gave false testimony, and made false extrajudicial statements ... to be used against [the plaintiff] at trial ...."); *Marom,* 2016 WL 916424, at *9 (explaining that plaintiff did not plausibly allege a deprivation of fair trial claim because he failed to assert how, in what way, or to what effect, the defendants specifically falsified information).

**\*8** Plaintiff further alleges that body camera video footage recordings show defendant P.O. Merdanovic "maliciously whispering something to defendant Chris Gordon in an attempt to let the defendant know that his body camera was on and recording their conversation while [P.O. Merdanovic] continued to commit unprofessional police misconducts and acts .... Defendant [P.O. Merdanovic] is also captured telling [P.O.] Boyland [7] to write a report claiming to have found the gun, which the officer refused to do." (*Id.* at ¶ 37). Neither of these allegations plausibly amount to violations of constitutional proportion. In particular, to the extent P.O. Merdanovic directed another officer to write a report (of a presumably false nature), plaintiff asserts that P.O. Boyland ultimately did not write said report. Thus, he cannot satisfy the elements of a claim for the deprivation of the right to a fair trial.

[7]      P.O. Boyland is not a named defendant in this action.

Plaintiff further alleges that defendant P.O. Merdanovic "lied in his report by asserting that [P.O.] Boyland saw the plaintiff throwing a bag even though video footage from the body worn cameras actually reveal that [P.O.] Boyland ... never saw plaintiff in possession of the bag but rather ... found a bag laying on the ground which the officer assumes that the plaintiff abandoned during the pursuit." (Compl. at ¶ 38). Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008), the court recommends that plaintiff's fair trial claim against defendant P.O. Merdanovic concerning the false report indicating that plaintiff was observed throwing a bag survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Plaintiff further asserts that defendant P.O. Merdanovic "wrongfully tamper[ed] with the firearm recovered on November 15[th] [,]" to the extent he apparently attempted to "unjam," or otherwise render safe, the firearm upon taking it into custody. (*Id.*

at ¶¶ 40, 44). Nothing in these allegations against this defendant gives rise to a claim of constitutional proportion, or suggests misconduct on the part of P.O. Merdanovic.

### B. P.O. Kyle Harrington

Plaintiff alleges that defendant P.O. Harrington "knew or should have known" that defendant Santina Rivera lied in her report concerning the events surrounding plaintiff's arrest. (Compl. at ¶ 39). Plaintiff further alleges that defendant P.O. Harrington "wrongfully tamper[ed] with the firearm recovered on November 15 th, to the extent he apparently removed the firearm from defendant P.O. Baldini's vehicle, took photographs of the firearm, and then attempted to "unjam" the firearm. (*Id.* at ¶¶ 40, 44). For the reasons previously set forth, plaintiff does not plausibly state a fair trial claim based on his conclusory allegation that defendant P.O. Harrington "knew or should have known" that defendant Santina Rivera was lying. Nor do plaintiff's contentions surrounding P.O. Harrington's "tampering" with the firearm plausibly state a claim.

Plaintiff further alleges that defendant P.O. Harrington provided "testimony that was wrongfully used to indict the defendant" at his grand jury proceedings, as well as "perjury testimony" at a suppression hearing. (Compl. at ¶ 42). Specifically, plaintiff alleges that defendant P.O. Harrington falsely testified that "he could actually see what the plaintiff was wearing when the plaintiff was walking to his home" on the night of November 15 th based on information that was provided to him and because of the photographs captured from the Wendy's surveillance cameras. (*Id.*). Plaintiff asserts that this was perjury because "neither the photograph nor the report that was relayed to [defendant P.O. Harrington] mentioned the facts which the defendant asserted[.]" (*Id.*). Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008), the court recommends that plaintiff's fair trial claim against defendant P.O. Harrington concerning his perjured testimony at the suppression hearing survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### C. P.O. John Baldini

**\*9** Plaintiff alleges that defendant P.O. Baldini "wrongfully allowed [defendant P.O. Harrington] to remove the firearm from his vehicle and then allowed for [defendant P.O. Harrington] to first take photographs of the firearm and then ... attempt[ ] to 'unjam' the firearm[.]" (Compl. at ¶ 44). Plaintiff alleges that defendant P.O. Harrington then "pass[ed] the firearm to [defendant P.O. Merdanovic who] was also unsuccessful in unjamming the firearm." (*Id.*). Plaintiff alleges that defendant P.O. Baldini was then "finally able to regain re-control of the firearm and thus the police report filed by [defendant P.O. Baldini] must be deemed as forgery." (*Id.*). For the reasons previously set forth, Plaintiff's allegations surrounding the handling of the firearm do not plausibly state a claim under § 1983.

### D. Sgt. Snell

Plaintiff alleges that defendant Sgt. Snell "wrongfully [went] into the storage locker area designated by the Cicero Police Department inorder [sic] to allegedly 'unjam' the firearm before then reporting that [defendant P.O. Harrington] ... properly stored the firearm into the evidence store unit section of the police locker room." (Compl. at ¶ 45). For the reasons previously set forth, Plaintiff's allegations surrounding the handling of the firearm do not plausibly state a claim under § 1983.

### E. Sgt. Thomas Leo

Plaintiff alleges that defendant Sgt. Leo "wrongfully allowed for the Cicero Police Officers (and the herein named defendants) to commit unprofessional actions in violation of the rules and regulations setforth [sic] by the Superintendent of the New York State Police and subsequently allowed for the officer to forge reports which he endorsed." (Compl. at ¶ 46). Plaintiff alleges that these reports were the "essential accusatory instrument used in wrongfully prosecuting plaintiff[.]" (*Id.*).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,*

950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

Courts in this circuit routinely hold that "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a [supervisory] official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 97-CV-2419, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Colon*, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti*, 983 F.3d at 618. The Second Circuit explained that, " 'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

 **\*10** Here, to the extent plaintiff seeks to impose liability on Sgt. Leo by virtue of his supervisory role alone, such a claim cannot withstand review. To the extent plaintiff asserts that Sgt. Leo was personally involved in violating his constitutional rights, the allegations as plead do not meet the minimal pleading requirements of Federal Rule of Civil Procedure 8. The purpose of Rule 8 is to give adequate notice regarding the nature of the claim being asserted so that the defendant can prepare an adequate defense. *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995). The allegations here do not provide that notice, to the extent that plaintiff has not alleged what forged and/or false reports, authored by whom, defendant Sgt. Leo is alleged to have "endorsed." Nor is it clear in what way defendant Sgt. Leo "endorsed" the forged reports, i.e. if this consisted of conduct, acts, or omissions beyond his general supervisory role. Accordingly, plaintiff's claims against Sgt. Leo should be dismissed for failure to state a claim.

## V. Defense Counsel Susan Carey

Plaintiff may not proceed with a § 1983 action against defendant attorney Susan Carey. The law is well established that attorneys, whether privately-retained or court-appointed, do not act under color of state law when they perform traditional functions of counsel. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *D'Amato v. Rattoballi*, 83 F. App'x 359, 360 (2d Cir. 2003) ("The district court properly concluded that [the plaintiff's] section 1983 claims against [the defendant] should be dismissed on the ground that [the defendant], a privately retained attorney, was not acting under the color of state law." (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))); *McCloud v. Jackson,* 4 F. App'x 7, 9-10 (2d Cir. 2001) ("To the extent that [the defense attorney] may have served as privately-retained counsel, rather than as a court-appointed attorney, he still could not be held liable under § 1983 because there was no showing that he worked with state officials to deprive [plaintiff] of federal rights."); *Harrison v. New York*, No. 14-CV-1296, 2015 WL 1413359, at *24 (E.D.N.Y. Mar. 20, 2015) ("[I]t is well-settled that private attorneys and law firms ... do not act under color of state law." (citing cases)); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) (holding that neither "public defenders ... nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position"). Because plaintiff alleges that defendant Carey was his defense attorney, he fails to state a claim under § 1983.

Liberally construed, plaintiff also appears to be attempting to commence a state law claim for legal malpractice against defendant Carey. As previously set forth, the district court may exercise supplemental jurisdiction over plaintiff's legal malpractice claim, to the extent it accepts my recommendation that some of plaintiff's federal claims survive initial review. "The elements of a claim of legal malpractice under New York law are: (1) an attorney-client relationship at the time of the alleged malpractice; (2) attorney negligence; (3) proximate causation and (4) actual damage to the client." *Bryant v. Silverman*, 284 F. Supp. 3d 458, 470 (S.D.N.Y. 2018) (citing *Kirk v. Heppt*, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008); *see also O'Callaghan v. Brunelle*, 84 A.D.3d 581, 582 (1st Dep't 2011); *Parola, Gross & Marino, P.C. v. Susskind*, 43 A.D.3d 1020, 1022 (2d Dep't 2007). An attorney is negligent if he or she fails to exercise that degree of care, skill and diligence commonly possessed and exercised by ordinary members of the legal community. *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 442 (2007). Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the court recommends that plaintiff's New York State legal malpractice claim against defendant Carey survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

## VI. <u>D.A. William Fitzpatrick</u>

**\*11** Plaintiff has alleged various § 1983 claims against defendant William Fitzpatrick, the District Attorney of Onondaga County. The only meaningful reference to defendant D.A. Fitzpatrick in the complaint is plaintiff's allegation that "employees working under the jurisdiction of Defendant William Fitzpatrick wrongfully allowed for" various errors to be made during plaintiff's criminal proceedings (*see* Compl. at ¶ 47). To the extent plaintiff asserts liability against this defendant in his supervisory capacity, and in the absence of factual allegations sufficient to plausibly allege that defendant D.A. Fitzpatrick was personally involved in any conduct that violated plaintiff's constitutional rights, the complaint fails to state a claim against this defendant. *See O'Dell v. Bill*, No. 13-CV-1275, 2015 WL 710544, at \*4 (N.D.N.Y. Feb. 18, 2015) ("[S]upervisory officials may not be held liable merely because they held positions of authority.").

Moreover, even if plaintiff had plausibly alleged that defendant D.A. Fitzpatrick was personally involved in plaintiff's criminal prosecution, it is well-settled that "[p]rosecutors sued under § 1983 enjoy absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.' " *Joyner v. Cty. of Cayuga*, No. 5:20-CV-1904088 (MAD/TWD), 2020 WL 1904088, at \*9 (N.D.N.Y. Apr. 17, 2020) (quoting, *inter alia, Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at \*5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00 CIV 3626, 2000 WL 1335865, at \*2 (S.D.N.Y. Sept. 15, 2000)). Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

Accordingly, the district court should dismiss plaintiff's claims against defendant D.A. Fitzpatrick.

## VII. <u>Tamara Danner</u>

Plaintiff's allegations do not plausibly state a cause of action against defendant Danner, to the extent she certified that the firearm was "operable." (Compl. at ¶ 56). Plaintiff's own opinion that the firearm was not "operable" because it was "jammed" does not suffice to establish that defendant Danner falsified evidence pertaining to his criminal prosecution, or that her opinion to the contrary could not be reasonably supported. *See, e.g., People v. Yarborough,* 158 A.D.3d 430, 431 (1st Dep't 2018) ("The

evidence also supports the conclusion that the pistol was operable, notwithstanding that it had jammed"). Plaintiff otherwise provides no allegations, other than his own suppositions, that defendant Danner's representation was false and/or "forgery."

## VIII. Michael Wright

Plaintiff fails to state a cause of action against defendant parole revocation specialist Michael Wright. As previously set forth, plaintiff's Fourteenth Amendment due process claims concerning the evidence and conduct at his parole revocation hearing are barred by *Heck*. Thus, because plaintiff's contentions that defendant Wright "wrongfully asked question to his witness in a manner that a competent person ... would deem as of leading witness inorder [sic] to get a guilty favorable outcome, and ... attempted to prevent the plaintiff from raising adequate points and bringing forth sufficient evidence" imply the invalidity of his parole revocation determination, his claims against defendant Wright are barred and must be dismissed. (Compl. at ¶ 80) *See Robinson v. Wright*, No. 5:21-CV-1098, 2023 WL 6122882, at *2 (N.D.N.Y. Sept. 19, 2023).

## IX. Injunctive and Declaratory Relief

**\*12** In addition to monetary relief, plaintiff seeks declaratory and injunctive relief pertaining to issues surrounding the continuing criminal prosecution against him in state court. (Compl. at ¶¶ 86-88, 91, 92). Plaintiff also asks this court to "render an injunction" directing defendant D.A. Fitzpatrick to commence a criminal investigation of the individuals "wrongfully slandering his character." (*Id.* at ¶ 89). Last, plaintiff seeks an injunction directing a criminal investigation of the conditions of confinement "of the plaintiff in the special housing unit." (*Id.* at ¶ 90).

In *Younger v. Harris*, 401 U.S. 37, 45 (1971), the Supreme Court endorsed "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). "[B]efore invoking *Younger*[,] a federal court may [also] appropriately consider ... [w]hether there is (1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2022) (alterations, citation, and internal quotation marks omitted). "The *Younger* doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief; the Supreme Court held in a companion case to *Younger* that *Younger*'s policy would 'be frustrated as much by a declaratory judgment as it would be by an injunction.' " *Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000) (quoting *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)). Here, insofar as plaintiff seeks the aforementioned declaratory and/or injunctive relief, the court abstains from intervening in the ongoing state criminal prosecution pursuant to *Younger*. *See, e.g.*, *Player v. Sini*, No. 21-CV-5613, 2021 WL 5084172, at *2 (E.D.N.Y. Nov. 1, 2021) (abstaining from adjudicating constitutional claims seeking injunctive relief regarding plaintiff's pending criminal case); *London v. Nassau County Dist. Attorney's Off.*, No. 20-CV-3988, 2020 WL 7699644, at *9 (E.D.N.Y. Dec. 28, 2020) (same).

Furthermore, this court does not have the authority to commence its own investigation, commence a criminal prosecution, compel a law enforcement agency to investigate suspected criminal activity, nor compel a prosecutor to prosecute. Prosecutors possess discretionary authority to bring criminal actions, and they are "immune for control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Further, plaintiff does not have standing to compel any law enforcement agency to investigate or prosecute any suspected criminal acts as there is no private right of action to enforce state or federal criminal statutes. *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 1:20-CV-1337 (TJM/CFH), 2021 WL 3518439 (N.D.N.Y. Apr. 13, 2021) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."); *McFadden v. Ortiz*, 5:12-CV-1244 (MAD/ATB), 2013 WL 1789593 (N.D.N.Y. Apr. 26, 2013).

## X. Other Claims

On November 6, 2024, almost a month after plaintiff filed his complaint, plaintiff filed a letter with the court submitting approximately forty pages of "supportive legal documentation" for annexation in connection to this case. (*See* Dkt. No. 9). In

SAIO BARZEE, Plaintiff, v. AARON M. WISON, JR., et al., Defendants., Slip Copy (2024)
Case 5:24-cv-01003-BKS-TWD   Document 19   Filed 11/25/24   Page 30 of 70
2024 WL 4751552

his letter, plaintiff complains, generally, of the conditions of confinement at the Onondaga County Justice Center ("OCJC"), where he is currently being detained. (*See id.*). Plaintiff also indicates that he intends to file a future § 1983 lawsuit in connection with these complaints. (*Id.* at 2). Plaintiff's letter does not identify any named defendants nor otherwise conform to the pleading requirements of a complaint. Moreover, the exhibits attached to plaintiff's most recent submission have no relevance to the allegations raised in plaintiff's complaint. Accordingly, and in light of plaintiff's representation, the court does not construe plaintiff's letter as a request to supplement his complaint in *this* action with any claims in connection with his confinement at OCJC. To this end, plaintiff's request to annex the forty pages of exhibits attached to his most recent submission to the complaint in this action should be denied. (*See* Dkt. No. 9-1).

**\*13**  To the extent plaintiff seeks "for criminal charges to be prosecuted" against unnamed deputies at the OCJC in his most recent letter, (*see* Dkt. No. 9 at 3), the district court should deny this request for the reasons stated above.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [8] and it is further

[8]  The court notes that although plaintiff's IFP application has been granted, plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

**RECOMMENDED**, that the following claims **SURVIVE** *sua sponte* review: Plaintiff's (1) Fourteenth Amendment denial of the right to a fair trial claim against defendant P.O. Merdanovic relative to his allegedly false report that another officer observed plaintiff "throwing a bag," (2) Fourteenth Amendment denial of the right to a fair trial claim against defendant P.O. Harrington relative to the alleged false testimony he provided at the (a) grand jury proceedings on January 11, 2024, and (b) suppression hearing on June 28, 2024, and (3) legal malpractice claim under New York State law against defendant Susan Carey; and it is further

**RECOMMENDED**, that the following claims be **DISMISSED with prejudice:** [9] Plaintiff's (1) Eighth Amendment claims for cruel and unusual punishment, (2) § 1983 claim against defendant D.A. William Fitzpatrick based on his prosecutorial immunity, and (3) claims for injunctive and/or declaratory relief; and it is further

[9]  Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).

**RECOMMENDED**, that all remaining claims be **DISMISSED without prejudice** [10] pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted; and it is further

[10]  Should Plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original Complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which Plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**RECOMMENDED,** that plaintiff's request to attach the forty pages of exhibits at Dkt. No. 9-1 to the complaint in this action (Dkt. No. 1) be **DENIED**, and it is further

**ORDERED, that plaintiff must <u>wait until the District Court rules on this Order and Report-Recommendation before he files any proposed amended complaint</u>**, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.[11]

[11]    The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

 **\*14**  Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

Tabular or graphical material not displayable at this time.

**All Citations**

Slip Copy, 2024 WL 4751552

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4250316
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Calvin L. BULLUCK, Plaintiff,

v.

Ronald R. BENJAMIN, Esq., in his individual and official capacity;

Paul F. Battisti, Esq., in his individual capacity, Defendants.

3:24-CV-0347 (GTS/ML)

|

Signed July 11, 2024

**Attorneys and Law Firms**

CALVIN L. BULLUCK, Plaintiff, Pro Se, Elmira Correctional Facility, Post Office Box 500, Elmira, New York 14902.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

*1 The Clerk has sent a *pro se* complaint in the above captioned action together with an amended application to proceed *in forma pauperis*, inmate authorization, and letter to the Court filed by Calvin L. Bulluck ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 6, 7, 8.) For the reasons discussed below, I grant Plaintiff's amended *in forma pauperis* application and recommend that Plaintiff's Complaint be dismissed in its entirety without prejudice but without leave to amend. (Dkt. Nos. 1, 6.)

**I. BACKGROUND**

Construed as liberally [1] as possible, Plaintiff's Complaint alleges that defendants Ronald R. Benjamin and Paul F. Battisti (collectively "Defendants")—who are privately retained criminal defense attorneys—violated his civil rights. (*See generally* Dkt. No. 1.)

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).

More specifically, the Complaint alleges that Plaintiff was arrested and arraigned on state criminal charges in Binghamton, New York on August 23, 2021. (Dkt. No. 1 at 4.) The Complaint alleges that Plaintiff retained Defendant Benjamin to represent him with respect to the state criminal charges from August 25, 2021, until July 5, 2022. (Dkt. No. 1 at 5.) Plaintiff alleges that he paid Defendant Benjamin $2,500.00 for his services, and Defendant Benjamin promised Plaintiff a specific "plea deal that he did not deliver." (*Id.*)

The Complaint alleges that Plaintiff retained Defendant Battisti to represent him with respect to the state criminal charges from July 25, 2022, until the "first week of 8/2022; 12/14/23." (*Id.* at 5.) Plaintiff alleges that he paid Defendant Battisti $4,500.00 for his services, sought to withdraw his plea of guilty, and was released from custody on November 4, 2022. (Dkt. No. 1 at 12.) Plaintiff alleges that there were no court dates scheduled until he was returned on a warrant and charged with bail jumping in the second degree. (*Id.*)

Based on these factual allegations, the Complaint appears to assert the following two claims: (1) a claim that Plaintiff's right to counsel pursuant to the Sixth Amendment and 42 U.S.C. § 1983 was violated by Defendants; and (2) a claim that Defendants violated their contractual obligations to Plaintiff pursuant to New York common law. (*See generally* Dkt. No. 1.) As relief, Plaintiff seeks unspecified compensatory damages. (*Id.*)

## II. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). [2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[2]   Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

**\*2**  Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 6 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 7.)

Accordingly, Plaintiff's amended application to proceed with this action IFP is granted. (Dkt. No. 6.)

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed.

**\*3** To establish a claim under § 1983, the plaintiff must allege that "the conduct complained of ... [was] committed by a person acting under color of state law," and "deprived ... [him] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.").

Section 1983 imposes liability for constitutional violations by state actors; Defendants, who are private attorneys, are not state actors. "[P]ublic defenders, including Legal Aid attorneys, court-appointed counsel and private attorneys do not act under the color of state law merely by virtue of their position." *Delarosa v. Serita*, 14-CV-737, 2014 WL 1672557, at \*3 (E.D.N.Y. Apr. 28, 2014); *Licari v. Voog*, 374 F. App'x 230, 231 (2d Cir. 2010) ("It is well established that private attorneys—even if the attorney was court appointed—are not state actors for the purposes of 1983 claims."); *Harvey v. Queens Cty. Dist. Attorney*, 18-CV-5373, 2020 WL 837357, at \*3 (E.D.N.Y. Feb. 20, 2020) ("[C]ourt-appointed attorneys ... do not act under color of state law when they perform traditional functions of counsel."); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of [Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."). The Complaint does not allege any facts that could plausibly support a finding that Defendants (Plaintiff's lawyers) were state actors or acted under color of state law. *See O'Donoghue v. United States Soc. Sec. Admin.*, 828 F. App'x 784, 787 (2d Cir. 2020) (summary order) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)) ("Private attorneys are generally not 'state actors' for purposes of § 1983."). Nor has the Complaint alleged any facts from which the Court could reasonably construe a plausible § 1983 conspiracy or joint actor claim. *See, e.g.*, *DeFreitas v. Toulon*, 23-CV-5933, 2024 WL 308250, at \*10 (E.D.N.Y. Jan. 26, 2024).

As a result, I recommend that Plaintiff's claims against Defendants pursuant to 42 U.S.C. § 1983 be dismissed for failure to state a claim upon which relief may be granted. [4]

[4]    To the extent that Plaintiff wishes to pursue a claim of ineffective assistance of counsel in connection with the state court criminal proceedings, he must make that claim in the state court, or if he is convicted of the state court charges, in state court post-conviction proceedings. *See, e.g.*, *Randolph v. Suffolk Cnty. District Attorney's Office*, 21-CV-0841, 2021 WL 1124603, at \*4 (E.D.N.Y. Mar. 24, 2021) (noting that a plaintiff who has been convicted in state court may raise an ineffective assistance of counsel claim during "his appeals in state court and then [through] a petition for a writ of *habeas corpus* in federal court" (citation omitted)).

Having found that all of Plaintiff's federal claims are subject to dismissal, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*,

491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").

**\*4**  Accordingly, I recommend that Plaintiff's state law claims against Defendants be dismissed.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [5]

[5]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

As set forth above, the problem with Plaintiff's claims pursuant to 42 U.S.C. § 1983 are substantive such that a better pleading will not cure them. As a result, I recommend that Plaintiff's claims be dismissed without prejudice but without leave to amend.

## VI. PLAINTIFF'S LETTER

Plaintiff also filed a letter with the Court. (Dkt. No. 8.) Plaintiff's letter does not appear to seek any relief from the Court or state the grounds for relief. (*Id.*) To the extent that Plaintiff's letter is liberally construed as a supplement to the Complaint, it failed to comply with Fed. R. Civ. P. 15(d) because it was not made "[o]n motion and reasonable notice" and did not "set[ ] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Moreover, even liberally considering the letter and its attachments with the Complaint, the undersigned finds that the allegations against Defendants still suffer from the same deficiency set forth above: Defendants are not state actors for purposes of liability pursuant to 42 U.S.C. § 1983.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 7) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 7) to the Financial Deputy of the Clerk's office; and it is further respectfully

**\*5  RECOMMENDED** that the Court **DISMISS** the Complaint (Dkt. No. 1) **WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [6]

[6]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[7]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2024 WL 4250316

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2747619
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Abdul N. ALI, Plaintiff,

v.

Det. Arthor SHATTUCK, Det. John Doe, Ada Sarah Carpenter, St. Lawrence County District Attorney, Defendants.

8:24-CV-0128 (DNH/CFH)
|
Signed May 29, 2024

**Attorneys and Law Firms**

Abdul N. Ali, 23-B-4295, Orleans Correctional Facility, 3531 Gaines Basin Road, Albion, New York 14411, Attorneys for plaintiff.


### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE


### I. **In Forma Pauperis Application**

 **\*1**  Presently before the Court is plaintiff pro se Abdul Ali's application for leave to proceed in forma pauperis ("IFP") and review of his amended complaint [1] pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. See Dkt. Nos. 3-4, 6. Upon review of plaintiff's IFP application, the undersigned determines that plaintiff financially qualifies for leave to proceed IFP. Plaintiff is advised that, despite being granted IFP status, he is still required to pay any costs and fees he may incur in this action, including, but not limited to, copying fees, transcription fees, or witness fees.

[1]     Plaintiff filed his original complaint on January 29, 2024. See Dkt. No. 1. Plaintiff filed his amended complaint on May 17, 2024. See Dkt. No. 6. Plaintiff wrote the word "supplement" on the form complaint. See id. He also included a cover letter referring to the filing as a "supplemental complaint." Dkt. No. 6-1. However, an amended complaint supersedes and replaces an original complaint in its entirety. Further, a plaintiff may not incorporate by reference any portion of an original complaint into an amended complaint. Thus, as the operative pleading is the amended complaint, the Court will base its review of the sufficiency of the complaint on the amended complaint only. See Dkt. No. 6.


### II. **Initial Review**


### A. **Legal Standards**

28 U.S.C. § 1915 provides that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**\*2** "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). [2] Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...; and

(3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

[2]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If

doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Amended Complaint

Plaintiff states that "[o]n September 18, 2023[,] before the Hon. G. Hobbs the petitioner accepted a plea to a Court that lacks jurisdiction. There was a want of due process." Dkt. No. 6 at 5. Plaintiff contends that he was "[c]harged with criminal possession in the 3 $^{rd}$ degree with the intent to sell, in violation of Penal law 220.16." Id. Plaintiff as sentenced to three years of imprisonment and two years of post-release supervision. See id.

Plaintiff elaborates that he was arrested without a warrant on August 3, 2022. Compl. at 5. Plaintiff was "take [sic] to and illegally held at the Hudson County Jail." Id. Two "unknow [sic] police officer of Hudson County New Jersey" arrested plaintiff. Id. "Police Officers of St. Lawrence County Canton New York came to Hudson County Jail to pick the plaintiff up." Id. at 6. Plaintiff contends that these officers "used a false unfiled warrant to pick up the plaintiff and took the plaintiff to St. Lawrence County Jail." Id. Plaintiff appeared before St. Lawrence County Supreme Court Judge Gary Hobbs at an unspecified date after arriving to St. Lawrence County Jail. See id. Plaintiff was "informed of his charges, byt never provided any accusatory instrument." Id. Plaintiff "was charged but never arraigned [sic] on the charges of conspircy [sic] 2 $^{nd}$, intent to perform a Class A Felony and criminal possession control [sic] substance in the 3 $^{rd}$ degree with intent to sell a Class B Felony." Id. "Plaintiff was released on the state [sic] day without being arraigned [sic]. The Court released the Petitioner and made a new Court date." Id. Plaintiff "was again picked up and illegally extradicted [sic] from Hudson County Jail and taken without an official warrant from a Court of Compentent [sic] Jurisdiction. The plaintiff was illegal [sic] taken back to St. Lawrence County Jail." Id.

**\*3** On April 4, 2023, plaintiff appeared before Judge Hobbs for the second time. See Dkt. No. 6 at 7. Judge Hobbs assigned plaintiff Robert Fix as his defense attorney. See id. Mr. Fix "would not provide copies of the Discovery. Counsel would only demand that the Plaintiff Accept a plea." Id. Plaintiff "maintains that he broke no law. The plaintiff [sic] position is that he was kidnap [sic]. Arrested without a warrant or probable cause." Id. Plaintiff contends, "[t]he entire proceedings was [sic] a sham, a pretense of prosecution. The [sic] Directed that The Grand Jury True Bill of Indictment, all discovery and motions to be filed with St. Lawrence Supreme Court Clerk." Id. Plaintiff contends that the People and the defense attorney failed to comply with the Court order to file with the St. Lawrence Supreme Court clerk. See id. at 7. Instead, they "would file the papers with the Court Clerk under Index number 24515, the secret dual file illegal system. The True Bill was received by the County Clerk but never properly filed with the Supreme Court Clerk." Id. Plaintiff argues, "[t]he actions taken by the people was [sic] in bad faith. The entire proceed [sic] was a pretense of prosecution with the consent of the defense counsel." Id. Plaintiff contends that Mr. Fix "was adverse to his client and was apart of the conspiracy." Id. "The prosecution served in the capacity as investigators" who "instructed the police to illegally go to new Jersey to illegally bring him to St. Lawrence County." Id.

Plaintiff contends that the above conduct was violative of his rights under the Fourth, Fifth, Sixth, Tenth, and Fourteenth Amendments. See Dkt. No. 6 at 7. Plaintiff contends that he

has postconviction proceedings in the trial court. The Plaintiff motion to vacate the Judgment went unopposed because there is no Forum. The People did not execute the sentence and the Plaintiff shall proceed to the Federal Court on the writ of Habeas Corpus because the State Court is ineffective, and there is no other remedy at law other to call it into question by the Petition for the Writ of Habeas Corpus 28 U.S.C. 2241.

Dkt. No. 6 at 7. Plaintiff contends that "there is no evidence of a crime the people is [sic] moving in bad faith, and must answer to these serious allegations. Because the prosecution is a lie (Mooney violation)," Dkt. No. 6 at 8. Plaintiff contends that his extradition from New Jersey "violated the due process of law. The violation of Extradition Law can serve as basis for 1983 Action, where official violate Extradition procedure protected by the Constitution and Law of the United States 42 USC 1983." Id. at 8 (citing Harden v. Pataki, 320 F.3d 1289 (11th Cir. 2003)).

Plaintiff further states that he was "falsely arrested ... without probable cause or a warrant for arrest" and seeks "to be award [sic] monetary damages against the Office for five Million dollars." Dkt. No. 6 at 9. On the next page of his form complaint, he states that he seeks "[t]o be compensated for the illegal Action of Police, and Prosecutors in the amount of three (3) million dollars." Id. He also states he seeks "compensation against the Police and Prosecutors for false arrest, abuse of process, malious [sic] prosecution with punitive damages." Id. at 10. Plaintiff attaches to his amended complaint an "Order Upon Arraignment" dated August 3, 2022, signed by Hon. Craig P. Carriero, County Court Judge." Dkt. No. 6 at 1-16.

### C. **Initial Review of amended Complaint**

#### 1. **Heck v. Humphry**

As discussed above, plaintiff's claims stem from his criminal conviction and sentence. Plaintiff states that he "accepted a plea" on September 18, 2023. See Dkt. No. 6 at 4. The New York State DOCCS inmate look up confirms that plaintiff has been convicted of criminal possession of a controlled substance in the third degree. See *N.Y.S. DOCCS Look Up*, https://nysdoccslookup.doccs.ny.gov (last visited May 22, 2024).

As the District of Connecticut recently laid out:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original). For this reason, "the Second Circuit has recognized that the statute of limitations for a malicious prosecution claim brought pursuant to § 1983 begins to run at the time a criminal proceeding terminates in favor of the accused." Bakowski v. Kurimai, No. 3:98-cv-2287 (DJS), 2000 WL 565230, at *5 (D. Conn. Mar. 20, 2000), aff'd, 387 F. App'x 10 (2d Cir. 2003) (citing DiBlasio v. City of New York, 102 F.3d 654, 658 (2d Cir. 1996)). Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

**\*4**  Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023).

Plaintiff has failed to demonstrate that his conviction or sentence has been "executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Plaintiff's claims call into question his arrest, prosecution, and conviction are barred by Heck. "These are precisely the sort of claims that are contemplated by Heck, as they would imply the validity of his conviction. 'Claims for both false arrest and malicious prosecution both call into question the validity of a conviction, because false arrest requires a lack of probable cause and malicious prosecution requires probable cause and a termination of the proceedings in the [inmate's] favor." Id. at \*8 (quoting McFadden v. New York, No. 10-cv-141 (RRM / CLP), 2011 WL 6813194, at \*4 (E.D.N.Y. Dec. 28, 2011) and citing Warren v. Fischl, 674 F. App'x 71, 72 (2d Cir. 2017) (summary order) ("applying Heck to preclude prisoner's claim against police officers and prosecutors for unreasonable search and seizure and fabrication of evidence)."(additional citations omitted)). "Here, because Plaintiff has failed to show that his conviction has been overturned (and, in fact, declares he is currently incarcerated as a result of the above-referenced constitutional violations for a crime he did not commit) his § 1983 claims are barred under Heck unless and until such time as Plaintiff's conviction is overturned or his sentence is invalidated." Godley v. Onondaga Cnty., No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at \*6 (N.D.N.Y. Jan. 6, 2017), report and recommendation adopted, No. 5:16-CV-1419 (DNH/TWD), 2017 WL 2804944 (N.D.N.Y. June 28, 2017).


## 2. **Absolute Prosecutorial Immunity**

Plaintiff seeks to sue "the people," "the prosecution," and/or "prosecutors." Dkt. No. 6 at 6-7, 10. Although plaintiff does not identify any specific prosecutors in the body of the amended complaint, in the caption, he identifies one, ADA Sarah Carpenter. See id. at 1. In the body of the complaint, plaintiff contends that his constitutional rights were violated by "St. Lawrence County District Attorney." Id. at 10.

Plaintiff contends that the "prosecutors" violated his Fourth, Fifth, Sixth, Tenth and Fourteenth Amendment rights for "false arrest, abuse of process, [and] mali[c]ious prosecution." Dkt. No. 6 at 10. Plaintiff also appears to claim that the "prosecutors" conspired with the police to deprive him of his due process rights in connection with his extradition from New Jersey to St. Lawrence County. Dkt. No. 6 at 8. Plaintiff's claims against the St. Lawrence County District Attorney and Assistant District Attorney Carpenter are barred by absolute prosecutorial immunity.

Although plaintiff's complaint does not clarify the context of all of plaintiff's claims, against St. Lawrence County District Attorney and Assistant District Attorney Carpenter, what is clear is that plaintiff's claims against these defendants relate to non-investigative actions he alleges they have taken in their official capacities as prosecutors. Accordingly, they are entitled to absolute prosecutorial immunity.

 **\*5**  Further, to the extent plaintiff may wish to sue the St. Lawrence County District attorney and ADA Carpenter in their official capacities, such claims would be barred by Eleventh Amendment immunity. See Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993) (quoting Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988), cert. denied, 488 U.S. 1014 (1989)) (" 'When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.' "); see Gentry v. New York, No. 21-CV-0319, 2021 WL 3037709 (GTS/ML), at \*6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities as barred by the Eleventh Amendment), adopted by, 2021 WL 3032691 (N.D.N.Y. July 19, 2021). Accordingly, it is recommended that plaintiff's claims against St. Lawrence County District Attorney and ADA Carpenter be dismissed with prejudice as they are immune from suite under section 1983. See 28 U.S.C. 1915(e), 1915A.

### 3. **Municipal Defendant**

Plaintiff has named two police officers/detectives as defendants in the caption. However, the body of the complaint may be interpreted as seeking to bring claims, more generally, against the St. Lawrence County Police Department. Although plaintiff's complaint is barred by Heck, the undersigned notes that any claims against the police department would also be barred as alleged in the amended complaint.

> It is well established that [a] police department is an administrative arm of [a] municipal corporation, and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." Kelly v. Colonie Police Dep't, No. 8:20-cv-721 (GTS/CFH), 2020 WL 6465448, at *3 (N.D.N.Y. Sept. 21, 2020), report and recommendation adopted, No. 8:20-cv-0721 (GTS/CFH), 2020 WL 6445901 (N.D.N.Y. Nov. 3, 2020) (internal quotation marks omitted); see also DeLee v. New York, No. 5:20-cv-549 (GTS/ATB), 2020 WL 4288455, at *4 (N.D.N.Y. June 12, 2020), report and recommendation adopted, No. 5:20-cv-0549 (GTS/ATB), 2020 WL 4284131 (N.D.N.Y. July 27, 2020) (collecting cases dismissing claims against police departments). "Section 1983 provides that an action may only be maintained against a 'person' who has deprived another of rights under the 'Constitution and Laws.' " Hester-Bey v. Police Dep't, No. 12-cv-3320 (KAM), 2012 WL 4447383, at *1 (E.D.N.Y. Sept. 24, 2012). A municipal Police department is not a "person" within the meaning of Section 1983 and is, therefore, not a proper defendant. Id.

Zografidis, 2022 WL 21756775, at *9 (D. Conn. July 6, 2022).

A plaintiff may only proceed with claims against a municipal defendant, such as a police department, if he or she alleges that his or her constitutional rights were violated as a result of an official municipal policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); see also Bruker v. City of N.Y. 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting Anthony v. City of N.Y., 339 F.3d 129, 140 (2d Cir. 2003)). Plaintiff makes no such claims. Thus, to the extent that a liberal reading of the amended complaint suggests that plaintiff may be seeking to raise claims against the St. Lawrence County Police Department, it is recommended that such claims be dismissed for failure to state a claim upon which relief can be granted and as barred by Heck for the reasons discussed above.

### 4. **Claims against plaintiff's defense attorney**

Although plaintiff does not name his defense attorney as a defendant in the caption and in the "relief sought" states that he wishes to sue the prosecution and the police officers, he makes several references within the complaint to his defense counsel "conspiring" with the prosecution and police. To the extent plaintiff wishes to sue his attorney, plaintiff he cannot proceed under section 1983. "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (summary order). Additionally, "such claims are not plausible because attorneys, whether court appointed or privately retained, are generally not state actors for purposes of Section 1983." Wilson v. Flanders, No. 3:23-CV-00263 (DNH/TWD), 2023 WL 3251992, at *4 (N.D.N.Y. May 4, 2023), report and recommendation adopted, No. 3:23-CV-263, 2023 WL 3496372 (N.D.N.Y. May 17, 2023) (citing Polk Cty. v. Dodson, 454 U.S. 312, 325 (1981); Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997)). Accordingly, to the extent plaintiff may seek to bring a section 1983 claim against his attorney, it is recommended that this claim be dismissed.

**\*6** Second, to the extent plaintiff may wish to allege that his defense counsel engaged in a conspiracy with the prosecutors and/or police officers to deprive him of his constitutional rights, pursuant to 42 U.S.C. § 1983, "[a] conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law." Wilson, 2023 WL 3251992, at *4 (citing Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir.

2002); Asensio v. DiFiore, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019); Bornschein v. Herman, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018)). Thus, to the extent plaintiff seeks to bring a conspiracy claim against his defense counsel, it is recommended that such claim be dismissed. As the conspiracy claim is tied to his claims that Mr. Fix conspired with the police officers and prosecutors to deprive him of his constitutional rights, this claim is also barred by Heck for the reasons discussed, supra. Accordingly, it is recommended that such dismissal be without prejudice to renew should plaintiff be able to overcome the Heck bar in the future, but without leave to amend in this proceeding.

To the extent plaintiff wishes to bring a legal malpractice claim against his attorney, this would be a state law claim. See Delap v. Mackey, No. 1:21-CV-0847 (LEK/CFH), 2021 WL 5991702, at *7 (N.D.N.Y. Sept. 15, 2021), report and recommendation adopted as modified, No. 1:21-CV-0847 (LEK/CFH), 2021 WL 5354762 (N.D.N.Y. Nov. 17, 2021) (citing Ramos v. Zucker, No. 14-CV-5694 (SLT) (RER), 2014 WL 5363778, at *2 (E.D.N.Y. Oct. 20, 2014)). Here,

> The only possible basis for this Court's subject matter jurisdiction over plaintiff's legal malpractice claim would d be supplemental jurisdiction pursuant to 28 U.S.C. § 1367. However, "[t]he district court may decline to exercise supplemental jurisdiction over a claim ... [i]f the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); Spiegel v. Schulmann, 604 F.3d 72, 78 (2d Cir. 2010). As the undersigned concluded that it does not have subject matter jurisdiction, the undersigned finds that declining supplemental jurisdiction over plaintiffs' state law legal malpractice claim is proper.

Delap, 2021 WL 5991702, at *7. In sum, because plaintiff's amended complaint presents no valid federal claim, it is recommended that the Court decline to review this state law legal malpractice claim pursuant to its supplemental jurisdiction.

### 5. Conspiracy Claim against Prosecutors, Police Officers

Plaintiff appears to contend that defense counsel Mr. Fix, the "prosecutors," and the "police officers," conspired to deprive him of his constitutional rights. See dkt. no. 6 at 7 ¶19. As indicated above, plaintiff sets forth no more than a single, conclusory allegation that his defense counsel, Mr. Fix, "was apart [sic] of the conspiracy." Dkt. No. 6 at 7. Plaintiff's vague allegation of conspiracy involving the prosecutors and police also does not suffice. "Wholly conclusory claims of conspiracy are properly dismissed sua sponte on initial review." Hawthorne v. City of Albany, No. 1:17-CV-00716 (GTS/TWD), 2017 WL 3822112, at *7 (N.D.N.Y. July 25, 2017), report and recommendation adopted sub nom. Hawthorne v. Ruecker, No. 1:17-CV-0716 (GTS/TWD), 2017 WL 4351520 (N.D.N.Y. Oct. 2, 2017) (citing Johnson v. Goord, 12 F. App'x 22, 23 (2d Cir. 2000) (summary order)). Further, as plaintiff has failed to allege, in his current pleading, a valid constitutional violation, his claim that the prosecutors, police officers, or defense counsel conspired with each other to violate his Fourth, Fifth, Sixth, Tenth, and Fourteenth Amendment rights must fail "because there can be no conspiracy to violate an individual's constitutional right if there were no underlying constitutional violations." Dougal v. Lewicki, No. 1:23-CV-1167 (DNH/CFH), 2024 WL 1959668, at *5 (N.D.N.Y. May 2, 2024), adopted in part 2024 WL 2350003 (N.D.N.Y. May 23, 2024). Accordingly, it is recommended that plaintiff's apparent conspiracy claim against the prosecutors and police officers pursuant to 42 U.S.C. § 1983 be dismissed. As noted above, any conspiracy claims are tied into his claims that defendants violated his constitutional rights – claims that are currently barred by Heck. Thus, it is recommended that such dismissal be without prejudice to renew should plaintiff be able to overcome the Heck bar in the future, but without leave to amend in this proceeding.

### 6. Habeas Corpus

**\*7** Plaintiff references habeas corpus relief. See Dkt. No. 6 ("... Plaintiff shall proceed to the Federal Court on the writ of Habeas Corpus ...."). However, plaintiff may not seek habeas corpus relief through this section 1983 proceeding. Plaintiff is advised that if he wishes to seek habeas corpus relief, he must properly commence a separate habeas corpus proceeding pursuant to 28 U.S.C. § 2241. See, e.g., Simmons v. Fitzpatrick, No. 5:22-CV-00757 (LEK/TWD), 2022 WL 7666973, at *3 (N.D.N.Y.

July 29, 2022), report and recommendation adopted, No. 5:22-CV-00757 (LEK/TWD), 2022 WL 7508816 (N.D.N.Y. Oct. 13, 2022). Indeed, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Heck, 512 U.S. at 481. Accordingly, insofar as plaintiff is seeking to file a motion for writ of habeas corpus, it is recommended that such claim be dismissed without prejudice to plaintiff seeking to separately commence a habeas corpus proceeding, but with prejudice to amend in this proceeding.

## III. **Conclusion**

Wherefore, it is hereby **ORDERED**, that plaintiff's IFP application, Dkt. Nos. 3, 4, is **GRANTED**; and it is

**RECOMMENDED**, that the Clerk be directed to update the docket and caption in this case to reflect the defendants as those identified within the Amended Complaint: Det. Arthor Shattuck, Det. John Doe, Assistant District Attorney Sarah Carpenter, St. Lawrence County District Attorney, and Robert Fix, Esq., and terminate as defendants John Dow, John Dow #2, John Dow #3, and John Dow #4, see generally dkt. no. 6; and it is further

**RECOMMENDED**, that plaintiff's amended complaint, Dkt. No. 6, be **DISMISSED** in its entirety against all defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), but that the dismissal be without prejudice to plaintiff renewing his claims [3] only in the event he can show favorable termination of his sentence/conviction pursuant to Heck [4]; and it is further

[3]    This recommendation does not apply to any claims the undersigned recommends to be dismissed with prejudice.

[4]    See Simmons, 2022 WL 7666973, at *4 (recommending dismissal without prejudice, in the event the plaintiff could show, at some point in the future, favorable termination pursuant to Heck, but without opportunity to amend because of futility).

**RECOMMENDED**, that plaintiff's claims against the St. Lawrence County District Attorney and Assistant District Attorney Sarah Carpenter in their official capacities be **DISMISSED WITH PREJUDICE**, as barred by Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that all claims against St. Lawrence County District Attorney and Assistant District Attorney Sarah Carpenter in their individual capacities be **DISMISSED WITH PREJUDICE** as barred by absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, insofar as plaintiff may seek habeas corpus relief, such request is **DISMISSED** without prejudice to seek to bring a separate habeas corpus proceeding but without opportunity to renew in this proceeding; and it is further

**RECOMMENDED**, that, the Court decline to exercise supplemental jurisdiction over plaintiff's potential legal malpractice claim against his defense attorney, Robert Fix, Esq., and such claims be **DISMISSED** without prejudice [5] to plaintiff's ability to seek to pursue legal malpractice claims in an appropriate state court; [6] and it is

[5]    The undersigned recommends dismissal without prejudice in the event plaintiff may, in the future, be able to demonstrate favorable termination pursuant to Heck and, at that time, may wish to renew and seek to cure the defects of his conspiracy claim.

[6]    The undersigned takes no position on the merits or validity of any legal malpractice claim.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order, along with the unpublished cases, upon plaintiff in accordance with the Local Rules. Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [7]

[7]   If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 2747619

---

**End of Document**                                                         © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3460745
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Abdul N. ALI, Plaintiff,

v.

John DOW et al., Defendants. [1]

[1]     Plaintiff's amended complaint names a different set of defendants. The Clerk of the Court will be directed to amend the caption accordingly.

8:24-CV-128
|
Signed July 18, 2024

**Attorneys and Law Firms**

ABDUL N. ALI, Plaintiff, Pro Se, 23-B-4295, Orleans Correctional Facility, 3531 Gaines Basin Road, Albion, NY 14411.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On January 29, 2024, *pro se* plaintiff Abdul N. Ali ("plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision at Orleans Correctional Facility, filed this action alleging that four St. Lawrence County police officers violated his civil rights when they picked him up on a warrant. *See* Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 3–4. Thereafter, plaintiff filed an amended complaint that names a different set of municipal officials. Dkt. No. 6.

On May 29, 2024, U.S. Magistrate Judge Christian F. Hummel granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's amended complaint be dismissed without leave to further amend. Dkt. No. 7. As Judge Hummel explained, certain of plaintiff's federal-law claims were barred by immunity principles while others were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), a Supreme Court doctrine that bars civil rights claims that would necessarily imply the invalidity of an otherwise valid, underlying conviction. *See id.*

Plaintiff has filed objections. Dkt. No. 10. Upon *de novo* review, the R&R is accepted and will be adopted in all respects. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 7) is ACCEPTED;

2. The Clerk is directed to ADD defendants "Det. Arthor Shattuck," "Det. John Doe," "Assistant District Attorney Sarah Carpenter," "St. Lawrence County District Attorney," and "Robert Fix, Esq.";

3. The Clerk is directed to TERMINATE defendants "John Dow," "John Dow #2," "John Dow #3," and "John Dow #4";

4. Plaintiff's claims against defendant St. Lawrence County District Attorney and defendant Assistant District Attorney Sarah Carpenter in their official capacities are DISMISSED <u>with prejudice</u> as barred by Eleventh Amendment immunity;

5. Plaintiff's claims against defendant St. Lawrence County District Attorney and defendant Assistant District Attorney Sarah Carpenter in their individual capacities are DISMISSED <u>with prejudice</u> as barred by absolute prosecutorial immunity;

6. Plaintiff's false arrest and conspiracy claims against defendant Det. Arthor Shattuck and defendant Det. John Doe are DISMISSED without prejudice but <u>without leave to amend</u> as barred by *Heck v. Humphrey*;

7. Any municipality-liability claim against St. Lawrence County based on the conduct of the named defendants is DISMISSED without prejudice but <u>without leave to amend</u> as barred by *Heck v. Humphrey*;

8. Plaintiff's federal-law claims against defendant Robert Fix, Esq. are DISMISSED without prejudice but <u>without leave to amend</u> as barred by *Heck v. Humphrey*;

9. The Court DECLINES to exercise supplemental jurisdiction over any state-law malpractice claim against defendant Robert Fix, Esq.; and

**\*2** 10. Insofar as plaintiff may seek habeas corpus relief, that request is DISMISSED without prejudice to bring a separate and appropriate habeas corpus proceeding, but without an opportunity to renew in this proceeding.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 3460745

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Wilson v. Flanders, Not Reported in Fed. Supp. (2023)

2023 WL 3251992

2023 WL 3251992

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Quintin L. WILSON, Plaintiff,

v.

Sgt. Daniel FLANDERS et al., Defendants.

3:23-cv-00263-DNH-TWD

|

Signed May 4, 2023

**Attorneys and Law Firms**

QUINTIN L. WILSON, Plaintiff, pro se, 225323, Broome County Correctional Facility, P.O. Box 2047, Binghamton, NY 13902-2047.

### ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** The Clerk has sent the Court a civil rights complaint filed by Quintin L. Wilson ("Plaintiff") pursuant to 42 U.S.C. § 1983. (Dkt. Nos. 1, 1-5 [1].) Plaintiff has also filed a motion to proceed *in forma pauperis* ("IFP"). (Dkt. No. 6.) For the following reasons, the Court grants Plaintiff's IFP application for purposes of initial review and recommends dismissal of the complaint in its entirety.

[1]     The Court reads Dkt. Nos. 1 and 1-5 together as Plaintiff's complaint in recognition of Plaintiff's *pro se* status.

## I. IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP. (Dkt. No. 6.) After reviewing Plaintiff's application, this Court finds he is financially eligible for IFP status. Therefore, Plaintiff's IFP application is granted for purposes of initial review.

## II. BACKGROUND

Plaintiff initiated this action against Sgt. Daniel Flanders, Judge Joseph F. Cawley, Jr., Alexander Czebiniak, Christopher D. Grace, and Judge Kevin Dooley on February 28, 2023. (Dkt. Nos. 1, 1-5.) The Court takes judicial notice Judge Kevin Dooley was a Broome County Criminal Court Judge from 2014 to February 2022; [2] Judge Joseph F. Cawley, Jr., has been a Broome County Judge since 2008; [3] and Alexander Czebiniak is an Assistant District Attorney for Broome County. [4]

[2]     Jim Ehmke, *Broome County Court Judge Kevin Dooley retires*, Binghamton Home Page (Feb. 25, 2022, 5:28PM), https://www.binghamtonhomepage.com/news/broome-county-court-judge-kevin-dooley-retires/.

[3]     6th JD – BROOME COUNTY, NYCOURTS.GOV, https://ww2.nycourts.gov/courts/6jd/broome/county.shtml (last visited May 1, 2023); The Honorable Joseph F. Cawley, Trellis, https://trellis.law/judge/joseph.f.cawley (last visited May 1, 2023.)

Wilson v. Flanders, Not Reported in Fed. Supp. (2023)

2023 WL 3251992

Case 5:24-cv-01003-BKS-TWD    Document 19    Filed 11/25/24    Page 50 of 70

4      Alexander John Czebiniak, OPENGOVNY, https://opengovny.com/attorney/5931654 (last visited May 1, 2023.)

Plaintiff has filed a threadbare, conclusory complaint making it difficult for the Court to discern his claims. *See id.* From this complaint, however, the Court gleans the following. Plaintiff is suing Sgt. Flanders for "assaulting [him] at [his] home on the porch which put [him] in fear for [his] life" and which caused him to go into "Flight or Fight" on June 1, 2021. (Dkt. No. 1 at 1.) He is suing Judge Dooley, Judge Cawley, Alexander Czebiniak, and Christopher D. Grace for violations of his due process, speedy trial, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment rights. (Dkt. No. 1 at 1-2, Dkt. No. 1-5 at 2.) Plaintiff lists his first cause of action as "monetary relief" and "$1,000,00.00"; his second cause of action as "$750,000.00"; and his third cause of action as "$500,000.00." (Dkt. No. 1-5 at 4.) Plaintiff requests "monetary relief" from the Court. (Dkt. No. 1-5 at 5.)

## III. SUFFICIENCY OF THE COMPLAINT

### A. Legal Standard

Under Section 1915(e), the Court must dismiss a complaint filed IFP if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). [5]  The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest claims that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).

5      Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g., Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

**\*2**  A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*,

Wilson v. Flanders, Not Reported in Fed. Supp. (2023)

2023 WL 3251992

Case 5:24-cv-01003-BKS-TWD    Document 19    Filed 11/25/24    Page 51 of 70

126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Moreover, a court should not dismiss a *pro se* complaint "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B. Claims Against Alexander Czebiniak

Prosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it") (internal quotation marks and citation omitted). In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

**\*3** In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley*, 509 U.S. at 273. This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at \*5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00 CIV 3626, 2000 WL 1335865, at \*2 (S.D.N.Y. Sept. 15, 2000)). Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *see also Verbeek v. Teller*, 158 F. Supp. 2d 267, 282 (E.D.N.Y. 2001) (granting motion to dismiss claims against prosecutorial official because conspiracy allegation does not "negate her entitlement to absolute immunity") (citing *Dory*, 25 F.3d at 83).

Moreover, " '[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.' " *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989)); *see also Rich v. New York*, No. 21-CV-3835, 2022 WL 992885, at \*5 n.4 (S.D.N.Y. Mar. 31, 20221) ("[A]ny claims Plaintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, No. 21-CV-0319, 2021 WL 3037709 (GTS/ML), at \*6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment), *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

Although the allegations in the complaint do not clarify the context of Plaintiff's claims, Plaintiff appears to complain Alexander Czebiniak violated Plaintiff's due process, speedy trial, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment rights while performing his official duties as a prosecutor. (*See generally* Dkt. No. 1 at 2.) *Simon*, 727 F.3d at 171. Here, Plaintiff's allegations against Alexander Czebiniak clearly relate to non-investigative actions taken by Alexander Czebiniak in his official capacity as a prosecutor, and, therefore, he is entitled to prosecutorial immunity. *Simon*, 727 F.3d at 171; *see, e.g., Matthews v. Cnty. of Cayuga*, No. 5:17-CV-1004 (MAD/TWD), 2018 WL 2926272, at \*3 (N.D.N.Y. June 8, 2018) (dismissing

Case 5:24-cv-01003-BKS-TWD   Document 19   Filed 11/25/24   Page 52 of 70

Wilson v. Flanders, Not Reported in Fed. Supp. (2023)
2023 WL 3251992

claims against prosecutor on initial review because of prosecutorial immunity). Thus, Plaintiff's Section 1983 claims against Alexander Czebiniak fail as a matter of law.

Therefore, the Court recommends that Plaintiff's Section 1983 claims against Defendant Alexander Czebiniak, an Assistant District Attorney for Broome County, be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.

### C. Claims Against Judge Dooley and Judge Cawley

It is well-settled judges are absolutely immune from suit for damages for judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Absolute immunity protects judges for their judicial acts, even when such acts "are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation[.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been and however injurious its consequences were to the plaintiff. *Id.*

 **\*4** Although the allegations in the complaint do not clarify the context of Plaintiff's claims, Plaintiff appears to complain Judge Dooley and Judge Cawley violated his due process, speedy trial, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment rights while performing their official duties as judges. (*See generally* Dkt. No. 1 at 1-2.) *Mireles*, 502 U.S. at 11. Here, Plaintiff's allegations against Judge Dooley and Judge Cawley clearly relate to actions that are judicial in nature and, therefore, they are entitled to judicial immunity. *Mireles*, 502 U.S. at 11; *see, e.g., Hardy-Graham v. Southampton Just. Ct.*, No. 20-CV-0981(JS) (SIL), 2021 WL 260102, at *5 (E.D.N.Y. Jan. 25, 2021) (dismissing claims against a New York State court judge on initial review because of judicial immunity); *United States v. Bommer*, No. 1:19-CV-00823 EAW, 2020 WL 1963159, at *4 (W.D.N.Y. Apr. 21, 2020) (same). Thus, Plaintiff's Section 1983 claims against Judge Dooley and Judge Cawley fail as a matter of law.

Consequently, the Court recommends that all claims against Judge Dooley and Judge Cawley be dismissed with prejudice as Plaintiff seeks relief from defendants immune from suit under Section 1983. 28 U.S.C. §§ 1915(e), 1915A.

### D. Claims Against Christopher D. Grace

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). Private conduct is simply beyond the reach of Section 1983 "no matter how discriminatory or wrongful that conduct may be." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g., Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same). Here, Plaintiff has not made any plausible allegation that Christopher D. Grace acted under the color of state law.

Further, insofar as Plaintiff seeks to impose liability on Christopher D. Grace, presumably as Plaintiff's criminal defense attorney, based on the allegations in the current complaint, such claims are not plausible because attorneys, whether court appointed or privately retained, are generally not state actors for purposes of Section 1983. *See, e.g., Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.").

Case 5:24-cv-01003-BKS-TWD    Document 19    Filed 11/25/24    Page 53 of 70
Wilson v. Flanders, Not Reported in Fed. Supp. (2023)
2023 WL 3251992

As such, Plaintiff's Section 1983 claims against Christopher D. Grace are inadequately pled because he has failed to allege Christopher D. Grace acted under color of state law. *See* 42 U.S.C. § 1983; *Velez*, 401 F.3d at 84. The undersigned accordingly recommends dismissing all of Plaintiff's Section 1983 claims against Christopher D. Grace on the grounds that they are inadequately pled and frivolous. *See* 28 U.S.C. § 1915(e)(2)(B); *see also Livingston*, 141 F.3d at 437; *Walker v. Rivera*, No. 1:22-CV-560 (DNH/TWD), 2022 WL 2341544, at *3 (N.D.N.Y. June 29, 2022), *report and recommendation adopted*, No. 1:22-CV-560, 2022 WL 2805477 (N.D.N.Y. July 18, 2022).

### E. Claim Against Sergeant Flanders

**\*5** Construed liberally, Plaintiff asserts a Fourth Amendment excessive force claim against Sgt. Flanders. (Dkt. Nos. 1, 1-5.) "The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers in arresting suspects. To establish a Fourth Amendment excessive force claim, Plaintiff must show that the force used by the officer was 'objectively unreasonable.' " *Correa v. McLeod*, No. 3:17CV1059 (VLB), 2017 WL 2962884, at *3 (D. Conn. July 11, 2017). Determining whether the force is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). A court shall consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the [arrestee] poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Simply put, " '[n]ot every push or shove' amounts to a Fourth Amendment violation. Indeed, a '*de minimis* use of force will rarely suffice to state a Constitutional claim.' " *Acosta v. City of New York*, No. 11 Civ. 856(KBF), 2012 WL 1506954, at *10 (S.D.N.Y. Apr. 26, 2012) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 2005)). Moreover, a plaintiff must allege that he sustained an injury. *Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128, 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011). "However, an individual does not need to sustain a severe injury to maintain a claim." *Id.* (citing *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.")).

Here, Plaintiff has not provided "a short and plain statement of the claim showing that he is entitled to relief." Fed. R. Civ. P. 8(a)(2). Instead, he advances the general claim that Sgt. Flanders violated his constitutional rights by "assaulting" him on his porch, putting him in "fear for [his] life" which put him in "Flight or Fight" mode on June 1, 2021, in Binghamton, New York. (Dkt. No. 1 at 1.) Plaintiff's allegation against Sgt. Flanders is conclusory and simply devoid of facts to support an excessive force claim. He has also not pled that he sustained any injuries. Thus, the Court recommends dismissal of the claim without prejudice for failure to state a claim.

### F. Whether to Permit Amendment

A pro se complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez*, 171 F.3d at 795 (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112.

In this case, it is not clear whether better pleading would permit Plaintiff to cure the deficiencies identified above. Nevertheless, out of deference to Plaintiff's pro se status, the Court recommends that he be granted leave to amend to cure the deficiencies identified above, except with regard to any claims against Judge Dooley and Judge Cawley, who are entitled to judicial immunity, and Alexander Czebiniak, who is entitled to prosecutorial immunity.

**WHEREFORE**, for these reasons, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 6) is **GRANTED** solely for purposes of initial review; and it is further

Case 5:24-cv-01003-BKS-TWD    Document 19    Filed 11/25/24    Page 54 of 70

Wilson v. Flanders, Not Reported in Fed. Supp. (2023)
2023 WL 3251992

**RECOMMENDED** that Plaintiff's claims against Judge Dooley, Judge Cawley, and Alexander Czebiniak (Dkt. No. 1) be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. §§ 1915(e), 1915A; and it is further

**RECOMMENDED** that the remaining claims against Sgt. Flanders and Christopher D. Grace be **DISMISSED WITH LEAVE TO AMEND** [6] pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A; and it is further

[6] Should Plaintiff be granted leave to amend, any amended complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and Local Rule 10.1. Any amended complaint must be a complete pleading which will supersede and replace the original complaint in its entirety. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)).

**\*6 ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[7] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3251992

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3496372
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Quintin L. WILSON, Plaintiff,

v.

Sgt. Daniel FLANDERS et al., Defendants.

3:23-CV-263
|
Signed May 17, 2023

**Attorneys and Law Firms**

QUINTIN L. WILSON, Plaintiff, Pro Se, 225323, Broome County Correctional Facility, P.O. Box 2047, Binghamton, NY 13902.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On February 28, 2023, *pro se* plaintiff Quintin L. Wilson ("plaintiff") filed this action alleging that the named defendants violated his civil rights in connection with an incident that occurred at his home on June 1, 2021. Dkt. No. 1. Although this action was initially closed due to plaintiff's failure to pay the filing fee, Dkt. No. 3, he later moved for leave to proceed *in forma pauperis* ("IFP Application"), Dkt. Nos. 4, 6, 7, and the Clerk reopened the case and restored it to the active docket, Dkt. No. 8.

On May 4, 2023, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application for the purpose of initial review and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with partial leave to replead. Dkt. No. 10. As Judge Dancks explained, it might be possible for plaintiff to state a claim against defendants Grace and/or Flanders. *Id.* However, amendment would be futile as to any claims against Judge Dooley, Judge Cawley, or Alexander Czebiniak, because those defendants were entitled to absolute judicial or prosecutorial immunity. *Id.*

Plaintiff has filed objections. Dkt. No. 11. Broadly stated, plaintiff's objections appear to be another series of allegations regarding his possible civil rights claim or claims against defendant Flanders. *Id.* But objections are not the right place to try to replead a claim. Instead, objections are an opportunity for a litigant to identify specific portions of an R&R that may have been erroneous. Plaintiff has not done that. Accordingly, the R&R is accepted and will be adopted in all respects. *See* 28 U.S.C. § 636(b)(1)(C).

However, plaintiff is advised that he now has an opportunity to try to replead certain of his claims, including the claim or claims against defendant Flanders that he identifies in his objections to the R&R, by filing an amended pleading in accordance with the instructions set forth in Judge Dancks's R&R, including those on pages 11 and 12. But plaintiff may not replead his claims against Judge Dooley, Judge Cawley, and/or Alexander Czebiniak.

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's claims against Judge Dooley, Judge Cawley, and Alexander Czebiniak are DISMISSED with prejudice and without leave to amend;

3. Plaintiff's claims against defendants Flanders and Grace are DISMISSED with leave to amend;

4. Plaintiff shall have thirty days in which to amend his pleading;

5. If plaintiff files an amended complaint within the thirty-day deadline, the pleading shall be returned to Judge Dancks for an initial review;

6. If plaintiff does not file an amended complaint within the thirty-day deadline, the Clerk is directed to enter a judgment dismissing this action without further order of the Court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3496372

---

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01003-BKS-TWD    Document 19    Filed 11/25/24    Page 57 of 70

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

2021 WL 5991702

KeyCite Yellow Flag - Negative Treatment

Report and Recommendation Adopted as Modified by   Delap v. Mackey,   N.D.N.Y.,   November 17, 2021

2021 WL 5991702
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Pamela DELAP, Ronald Delap, Plaintiffs,
v.
Judge Michael MACKEY, et al., Defendants.

1:21-CV-0847 (LEK/CFH)
|
Signed 09/15/2021

**Attorneys and Law Firms**

Pamela Delap, 13 Sand Spurry Road, Ballston Spa, New York 12020, Plaintiff pro se.

Ronald Delap, 13 Sand Spurry Road, Ballston Spa, New York 12020, Plaintiff pro se.

## REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

### I. In Forma Pauperis

**\*1** Plaintiffs pro se Pamela Delap and Ronald Delap purported to commence this action on July 28, 2021, with the filing of a complaint and motion for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 1 ("Compl."), Dkt. No. 2. Plaintiffs also filed a motion for appointment of counsel. See Dkt. No. 3. The Court has reviewed plaintiffs' IFP application and determines that plaintiffs financially qualify to proceed IFP for purposes of filing. Plaintiffs are advised that they are still required to pay for any costs or fees they may incur in this matter. As the Court has granted plaintiffs' IFP application, the Court must next complete review of plaintiffs' complaint pursuant to 28 U.S.C. § 1915 to determine whether the complaint may proceed.

### II. Initial Review

#### A. Legal Standards

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. Where the plaintiff is proceeding pro se, the court must consider the claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

2021 WL 5991702

Case 5:24-cv-01003-BKS-TWD     Document 19     Filed 11/25/24     Page 58 of 70

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). A pro se litigant's pleadings are held to a less strict standard than those drafted by an attorney. See Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties."). Because plaintiff is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

**\*2**  (1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

**B. Complaint**

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

2021 WL 5991702

Case 5:24-cv-01003-BKS-TWD   Document 19   Filed 11/25/24   Page 59 of 70

First, plaintiffs' complaint fails to meet the requirements of Fed. R. Civ. P. 10. Plaintiffs' complaint is not organized in numbered paragraphs, limited to a single set of circumstances per paragraph. See FED. R. CIV. P. 10. Instead, plaintiffs' complaint consists of 12, single-spaced typed pages, and, at times, is difficult to follow. See generally Compl. Second, plaintiffs' complaint also fails to comply with Fed. R. Civ. P. 8 because it does not provide a short and plain statement of the Court's jurisdiction nor a short and plain statement showing how plaintiffs are entitled to relief. See FED. R. CIV. P. 8. Ultimately, it appears that plaintiffs contend that unspecified civil rights were violated in connection to legal representation and court proceedings relating to an underlying medical malpractice claim arising out of Ms. Delap's 2014 dental injury. The undersigned has reviewed the complaint carefully, and sets forth the description of the plaintiffs' alleged facts and claims to the best of its understanding.

**\*3** At some point, plaintiffs retained defendant attorney Jordan Pine to represent them with respect to their medical malpractice claim against defendants Aspen Dental Management, Aspen Dental of Upper Hudson Valley, and defendant Michaela Serseloudi, DDS (collectively "Aspen defendants" where appropriate), relating to a 2014 root canal procedure that allegedly caused Ms. Delap serious injury. See generally Compl. Defendant Zachary Mattison represented the Aspen defendants. See id. Caitlin Insurance Company appears to be the insurer for the Aspen defendants. See id. David Cabaniss is the attorney who represented Mr. Pine in an apparent lawsuit he commenced against plaintiffs relating to a payment dispute. See id. Plaintiff's medical malpractice claim was assigned to Albany County Supreme Court Judge Gerald Connolly. See id. at 1. Plaintiffs also appeared before Albany County Supreme Court Judge Michael Mackey. [1] Defendant Justin Cocoran was a law clerk for Judge Mackey during the relevant time period. [2] See Compl. at 3. Plaintiffs also later had an appeal heard by the Appellate Division, Third Department, including Judge Eugene Devine. See id. at 8-9.

[1]     It is not entirely clear whether plaintiffs appeared before Judge Mackey for the medical malpractice issue or solely for the alleged nonpayment of fees dispute between plaintiffs and Mr. Pine or both.

[2]     Plaintiffs' complaint makes clear that Judge Corcoran was not a judge during the relevant time period, and their claims against him are in his capacity as a judicial law clerk.

Plaintiffs contend that on or about April 11, 2018, they appeared along with Mr. Pine at a preliminary hearing before Judge Connolly. See Compl. at 1. Mr. Pine was supposed to engage in a settlement discussion, offering $995,000. Id. Mr. Pine told plaintiffs that Judge Connolly "only based the injury value at 100/200 thousand on the claim." Id. Defendants offered $55,000. Id. Mr. Pine also told plaintiffs that if they were to proceed to trial, Judge Connolly would reduce any award "based on his opinion of the value of the injury." Id. Ms. Delap "was not understanding" how he [Judge Connolly] could do this given all my medical records state this is a serious brain injury." Id. Plaintiffs argue that "April 11, 2018 was the start to fraud and many other criminal/illegal acts and abuse of authority against myself and my husband, Ronald." Id.

At some point thereafter, it appears that Mr. Pine commenced an action against plaintiffs seeking payment for legal fees, which ultimately resulted in a lien being placed on their house. Compl. at 2. Ms. Delap contends that this lawsuit caused her "confusion and upset' and she "did not understand why as he promised he would go to trial." Id. The parties appeared for a conference before Judge Connolly – what plaintiffs refer to as a "show cause" hearing – on April 30, 2018, apparently relating to Mr. Pine's action against plaintiffs for fees. Id. Plaintiffs believed that the "show of cause" is what "[a]ttorneys do to try to get removed, file a lien on a claim, and force a settlement." Id. During this conference, plaintiffs believe that Judge Connolly would not let Ms. Delap speak and only allowed her to respond with "yes/no" answers. Id. As this "Show Cause" hearing occurred two weeks before Mrs. Delap's medical malpractice and/or personal injury trial was to begin, Mr. Pine asked for an extension of the trial date, which Judge Connolly denied. Id. Ms. Delap contends that she "was not allowed anything that day" and she "feel[s] my rights were violated and I should have been able to speak and expand on the record as I have asked to in my opposition to Mr. Pine." Id. at 3. Plaintiffs contend that Mr. Pine was not prepared to proceed with trial. Id. On April 30, 2018, after a hearing on a "show of cause" hearing, Ms. Delap visited an Urgent Care – where she met with a Physician Assistant – because she was "in shock ... anxious," her head was hurting, and her blood pressure was elevated. Id.

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

Case 5:24-cv-01003-BKS-TWD    Document 19    Filed 11/25/24    Page 60 of 70

2021 WL 5991702

On May 10 or 11, 2018, plaintiffs had a conference before Judge Mackey, but the insurance company was not present at this conference. See Compl. at 3. Plaintiffs contend that they believe Mr. Pine "was a sham, previously worked at an insurance company near where he is from that closed for financial reasons," and that Mr. Pine "and his unnamed associate were all connected through this company." Id. At this conference, plaintiffs contend that they were told that Ms. Delap's medical records demonstrated that she was suicidal or homicidal. See id. at 3. Plaintiffs also stated that Mr. Pine threatened them at this conference, telling them that Ms. Delap would be " 'restrained, arrested, and my claim would be dismissed.' " Id. at 4. Mr. Pine told Ms. Delap "how much of a screw up I had made," but Ms. Delap "had no idea what he was talking about." Id. Mr. Pine "bul[lied]" plaintiffs to " 'accept an offer or else,' " leaving Ms. Delap "really scared, froze [sic] in fear." Id.

 *4  Plaintiffs state that Judge Mackey told Ms. Delap that if she did not agree to a settlement "there would be consequences," and he pointed to papers on a table that plaintiffs were not given an opportunity to review. Compl. at 4. Plaintiffs contend that they were not shown any papers or given any details about a settlement and only knew "what Mr. Pine stated." Id. Mr. Corcoran, who was Judge Mackey's law clerk, told plaintiffs that they "had no options but to accept $150,000." Id. Plaintiffs state that Mr. Corcoran "knew about an apparently approved of what was being done to me, threatening us to make us sign a settlement agreement we/I did not want to sign." Id. Plaintiffs contend that this amounted to "blackmail[,] colluding[,] and coercion." Id. Mr. Corcoran and others told plaintiffs that " 'people/juries would not take kindly to [Ms. Delap]; Albany is too conservative" and "there was much worse about how I could be arrested, restrained, dismissed, liens, wages garnished, and more (this went on for 10 hours May 11, 2019) (restrained, blackmail, and obstruction)." Id. After several hours of being at the courthouse and refusing the settlement many times, Ms. Delap "gave them a verbal to get home" because she "was exhausted and in pain, and I did not know what else to do." Id. at 4. Plaintiffs state that Mr. Delap informed Judge Mackey that "he had no agreement with Mr. Pine," and Ms. Delap stated that "Mr. Pine did not represent me, he was arguing against me." Id.

Sometime after this conference, Ms. Delap spoke with her doctor who informed her that she did not have any medical notes referring to her as suicidal and homicidal. See Compl. at 4. Plaintiffs state that Judge Mackey had a report stating that Ms. Delap was suicidal or homicidal "in front of him and did not show me, did not pause and state we need medical clearance, nothing, I was treated like a criminal, not a victim of negligence." Id. at 5. Sometime after this conference, Ms. Delap emailed Mr. Pine stating that "we were not accepting any offers but wanted to go to trial." Id. at 4. Ms. Delap was "afraid of Mr. Pine," and plaintiffs "did not know what he was up to with the courts or Mr. Mattison, and then, the courts and Judges as well, we were and had them all coming after me (Mr. Pine, Mr. Mattison, and Judge Mackey were colluding and making up a document for August 7, 2018 that I never saw until June 2021.)." Id.

> Plaintiffs also contend that a lien was placed on their home filed in 2016 from a Judge Devine who I filed complaints against ... many for bias, etc. As a result, I was discharged with prejudice for not having an attorney and there was no ruling that I know of regarding this bill, but it was attached to the claim, and it was never discussed except one time at the Appellate and the attorney did not know amount or have the bill.

Compl. at 5-6. Plaintiffs contend that a lien "should never have been placed on our home," but Judge Devine "added it in and would not allow me to represent himself." Id. Plaintiffs provide "we know the Firm behind this injustice, and we know how it all connects to my injury claim in 2016." Id. at 6.

Plaintiffs next reference an August 7, 2018, conference before Judge Mackey in his chambers. See Compl. at 6. Ms. Delap states that she thought that she would be able to explain a medical report that she had taken and tell Judge Mackey "how/what I was being threatened with," but Judge Mackey "was not going to hear me." Id. During this conference, Judge Mackey told Ms. Delap that she "agreed to this settlement (one I had not seen) and that even though I had requested another trial date his (Judge Mackey stated no) calendar was full as he said, and that was not going to happen." Id. Mrs. Delap contends that she "was set up by Judge Mackey, Mr. Pine, and Mr. Mattison, and I believe Judge Corcoran former employee of O'Connor Firm

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

Case 5:24-cv-01003-BKS-TWD   Document 19   Filed 11/25/24   Page 61 of 70

2021 WL 5991702

who has Aspen on retainer, and he worked there for 16 years prior was involved, and Judge Connolly based on sealing the first show of cause against me 4/30/2018 and not allowing me to speak to dismiss Mr. Pine." Id. at 6. Plaintiff contends that Mr. Corcoran "thought it was ethical, legal to sit there and tell me I had no options but to sign" a settlement agreement, despite his history with Aspen Dental. Id. at 6.

Plaintiffs again reference the alleged pressure they received regarding settlement. See Compl. at 6. Plaintiffs contend that "[v]icious threats went back and forth for several hours until late in the evening," when Ms. Delap was "told to sign the settlement." Id. Ms. Delap states that she refused to sign a settlement has she "ha[d] no counsel ... and I requested an attorney earlier that day, throughout the day, and Judge Mackey told me no, even I asked if I could take settlement and have an attorney look at it and Judge Mackey stated no." Id. Ms. Delap contends that Mr. Delap was "threatened with wage garnishment, loss of employment, and a lien on our home." Id. Mrs. Delap's requests to have the settlement negotiations placed on the record were denied, which plaintiffs appear to argue was done to pressure Ms. Delap to sign a settlement agreement. Id. at 6-7. Plaintiff next contends that Justice Denise Hartman "ruled" on February 26, 2019, that the situation was "duress." Id. Plaintiffs state that on this date, Judge Hartman "places an order of DURESS and overturns the stipulation with a total of five orders." Id. at 8. [3]

[3]   Plaintiff references an attachment of "Exhibit B" here, but no exhibits are attached to the complaint. See Compl. at 8.

 **\*5** Plaintiffs next provide that "Appellate overturns Judge Hartman order in May of 2020." Compl. at 8. Plaintiffs assert that "Appellate makes erroneous mistakes with biased Judge Devine." Id. Plaintiffs appear to contend that the Court of Appeals, State of New York, "has this as a motion to be heard" but that "it appears they are unsure of jurisdiction." Id. The Court of Appeals

> accepted a motion I filed, but I really think that they are just trying to figure out an excuse to cover Judge Mackey, and Judge Mackey recused himself after this forced signing of the settlement and refuses to explain why there was no record and refuses to accent an intent for this claim/suit I am trying to now file with Federal Court.

Id.

Plaintiffs next argue that Mr. Pine's attorney David Cabaniss argued before the Court of Appeals that certain documents apparently related to an August 7, 2018, "Show of Cause" should "not be allowed or show to the Chief Justice Janet DiFiore." Compl. at 10. Plaintiffs argue that "[t]his is profoundly disturbing and unacceptable in a court of Law, where a person is to be protected by the law, absolutely no one is above criminal acts of the law." Id.

Plaintiffs appears to seek to sue defendant Caitlin Insurance Company because "knows it is illegal to accept a forced settlement and not on any record, and we are trying to explain this to the NYS Insurance company who does not understand the law, it has been a nightmare, so much fraud." Compl. at 7. Plaintiffs contend that "the insurance company is supposed to take part in settlement discussions as they did on April 11, 2018, but none after this date." Id. Plaintiffs also appear to state that they seek to sue the Aspen defendants because they were "fully aware of what was going on" and they "took part, as it was anything to keep settlement low and my brain injury out of this[.]" Id.

Ms. Delap opines, "[w]hat was done to me was a violation of LAW and my CIVIL RIGHTS." Compl. at 9. Ms. Delap contends that "no one should ever be tortured by all the fear, threats, blackmail/extortion[,] and berating, bullying, obstructing justice and abusing their authority in the way that was done to me." Id. "All I asked for was a trial, I told them and tried to tell them many times Mr. Pine did not represent me." Id. Plaintiffs argue that they "were blackmailed and had no choice at 7:45PM in the evening after the Courthouse had closed, no official court records at all, were forced to sign or loose [sic] everything." Id.

### C. Analysis

As a threshold matter, the undersigned observes that plaintiffs fail to comply with Rule 8 of the Federal Rules of Civil Procedure as the complaint does not present numbered paragraphs with a single fact/thought limited to each paragraph. Further, as plaintiff's complaint is a difficult to follow series of events, plaintiffs also fail to meet the requirements of Rule 10, which direct that a complaint must contain a short and plain statement of the claim demonstrating that the plaintiff(s) is entitled to relief. Significantly, plaintiffs' complaint appears largely barred by the Rooker-Feldman doctrine. To the extent that claims remain that may not be barred by the Rooker-Feldman doctrine, the remaining claims do not suffice to establish this Court's jurisdiction. The undersigned explains its reasoning below.

Plaintiffs seek this Court to review the decisions and actions of state courts. Plaintiffs do not include with their complaint any copies of any of judicial decisions, but reference a decision from Justice Denise Hartman, Albany County Supreme Court, that may or may not have determined that plaintiffs entered into the settlement agreement under duress. See Compl. at 8. It is unclear from plaintiffs' complaint whether Judge Hartman vacated the settlement. Plaintiffs contend that Justice Hartman's decision was appealed to the Appellate Division, Third Department, who overturned Justice Hartman's decision. See id. Although plaintiffs did not provide copies of these Supreme Court or Appellate Division decision, this Court's Westlaw search revealed that in a decision dated June 19, 2020, the Appellate Division, Third Department, Delap v. Serseloudi, 184 A.D. 992, 125 N.Y.S. 3d 189 (NY App Div 3d Dep't June 18, 2020), reversed a lower court decision of Justice Hartman which had vacated the medical malpractice settlement. Plaintiffs contend that Judge Devine was "biased" and that the Appellate Division "makes erroneous mistakes." Id. Plaintiffs state that the Court of Appeals "appears unsure of jurisdiction." Id. A Westlaw search further reveals that on March 30, 2021, the Court of Appeals, State of New York, dismissed plaintiffs' motion for leave to appeal "upon the ground that the order sought to be appealed from does not finally determine the action within the meaning of the Constitution." Delap v. Serseloudi, et al., 36 N.Y.3d 1080 (N.Y. 2021).

 **\*6**  To the extent plaintiffs seek review of the dismissal of their motion for leave to appeal, the Appellate Division's reversal of Albany County Supreme Court's decision, or this Court to address the same issues that were before these state courts, this Court lacks the ability to perform such review under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine recognizes that, except for the Supreme Court of the United States, federal courts may not exercise appellate jurisdiction over state court judgments. See McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007). Under the Rooker-Feldman doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "[1] the plaintiff lost in state court[;] [2] the plaintiff ... complain[s] of injuries caused by a state-court judgment, [3] the plaintiff ... invite[s] district court review and rejection of that judgment[;] [and 4] the state-court judgment [was] rendered before the district court proceeding commenced." McKithen, 626 F.3d at 154 (citation and additional alterations omitted). "The Rooker-Feldman doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, a role which Congress has reserved to [the Supreme Court]." Verizon Md. Inc. v. Public Svc. Comm'n of Md., 535 U.S. 635, 644 n.3 (2002). Therefore, district courts do not have jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." Rabinowitz v. New York., 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (internal quotation marks and citation omitted). The Rooker-Feldman doctrine "may be raised at any time by either party or sua sponte by the court." Moccio v. N.Y.S. Office of Court Admin., 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted), abrogated on other grounds by Exxon Mobil Corp., 544 U.S. at 283.

Thus, to the extent plaintiffs seek to bring this action for alleged violations of their civil rights with respect to an allegedly coerced settlement agreement and/or the reversal of the vacating of that settlement agreement, such claims must be dismissed with prejudice due to the Rooker-Feldman doctrine. See Rabinowitz, 329 F. Supp. 2d at 376. As explained above, plaintiffs appear to challenge the Appellate Division decision overturning Judge Hartman's vacating of the settlement and/or the Court of

**Delap v. Mackey, Not Reported in Fed. Supp. (2021)**

2021 WL 5991702

Appeals' decision to deny leave to appeal, and potentially seek consideration of the same issues that were before those Courts. This Court lacks jurisdiction to perform such review for the reasons discussed above.

It appears that two of plaintiffs' apparent claims would not be barred by the <u>Rooker-Feldman</u> doctrine[4] : (1) apparent allegations of judicial misconduct against defendants Judge Mackey, Judge Devine, and Judge Connolly; and (2) legal malpractice against defendant Pine. <u>See</u> generally Compl. However, for the reasons that follow, the undersigned determines that these claims also cannot proceed.

[4]      It does not appear that these issues were before the state courts for review. <u>See</u> generally Compl.; <u>Delap v. Serseloudi, 184 A.D. 992, 125 N.Y.S. 3d 189 (NY App. Div. 3d Dep't June 18, 2020).</u>

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction. <u>See</u> <u>Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552 (2005).</u> Federal jurisdiction is only available when a "federal question" is presented, <u>28 U.S.C. § 1331,</u> or the plaintiff and all defendants are of diverse citizenship and the amount in controversy exceeds $ 75,000. <u>See</u> <u>28 U.S.C. § 1332.</u> When a court lacks subject matter jurisdiction, dismissal is mandatory. <u>See</u> <u>Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).</u> Therefore, although courts "construe a pro se litigant's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." <u>Ally v. Sukkar, 128 F. App'x 194, 195 (2d Cir. 2005)</u> (summary order) (internal citation omitted).

Thus, plaintiffs must be able to demonstrate either diversity jurisdiction or federal question jurisdiction. Plaintiffs have not demonstrated diversity jurisdiction because they cannot demonstrate that they are citizens of a different state than all defendants. Indeed, plaintiffs provide that they are citizens of New York State, and several defendants are citizens of New York State as well. To show diversity jurisdiction, plaintiffs must demonstrate they are citizens of a different states from <u>all</u> of the defendants. Thus, if any defendant is also a "citizen" of New York, there is not complete diversity jurisdiction. <u>See</u> <u>Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990);</u> <u>see also</u> <u>Herrick Co., Inc. v. SCS Communs., Inc., 251 F.3d 315, 322 (2d Cir. 2001)</u> (finding it axiomatic that "diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships"). As plaintiffs cannot demonstrate complete diversity jurisdiction, to proceed, plaintiffs must establish federal question jurisdiction.

 **\*7**  To invoke federal question jurisdiction, the plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." <u>28 U.S.C. § 1331.</u> Stated another way, "[f]ederal question jurisdiction may properly be invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." <u>New York v. White, 528 F.2d 336, 338 (2d Cir. 1975).</u>

The only claims not barred by the <u>Rooker-Feldman</u> doctrine are plaintiffs' complaints of judicial misconduct and legal malpractice, and these claims do not involve questions of federal law. Indeed, legal malpractice is a state law claim. <u>See,</u> e.g., <u>Ramoz v. Zucker,</u> No. 14-CV-5694 (SLT) (RER), 2014 WL 5363778, at \*2 (E.D.N.Y. Oct. 20, 2014). The only possible basis for this Court's subject matter jurisdiction over plaintiff's legal malpractice claim would d be supplemental jurisdiction pursuant to <u>28 U.S.C. § 1367.</u> However, "[t]he district court may decline to exercise supplemental jurisdiction over a claim ... [i]f the district court has dismissed all claims over which it has original jurisdiction." <u>28 U.S.C. § 1367(c)(3);</u> <u>Spiegel v. Schulmann, 604 F.3d 72, 78 (2d Cir. 2010).</u> As the undersigned concluded that it does not have subject matter jurisdiction, the undersigned finds that declining supplemental jurisdiction over plaintiffs' state law legal malpractice claim is proper. Moreover, although the undersigned declines to exercise supplemental jurisdiction reach plaintiffs' legal malpractice claim, the undersigned also observes that under New York State law, there is a three-year statute of limitations for legal malpractice, which "begins to run on "the day an actionable injury occurs,' regardless of when a plaintiff discovers the injury." <u>Caldwell v. Barrier,</u> 1:19-CV-1516 (BKS/CFH), <u>2020 WL 918717, at \*4 (N.D.N.Y. Feb. 26, 2020)</u> (internal citation omitted); <u>N.Y. CPLR § 214.</u> Plaintiffs' complaint appears to allege that Mr. Pine's alleged legal malpractice occurred in April and May 2018, when plaintiffs allege that they were coerced into signing a settlement agreement and otherwise mistreated. <u>See</u> Compl. at 1-4. However, plaintiffs

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

2021 WL 5991702

purported to commence this action on July 28, 2021, which is more than three years after the "actionable injury" occurred. Caldwell, 2020 WL 918717, at *4. Thus, based on the information in plaintiffs' complaint, any potential state law legal malpractice claims may be barred by the New York State's statute of limitations. [5] Accordingly, as the Court does not have jurisdiction to review plaintiffs' claims for legal malpractice, it is recommended that this claim be dismissed with prejudice.

[5]     The undersigned notes, though, that the undersigned declines to reach the merits of plaintiffs' apparent legal malpractice claim and makes no comment as to whether plaintiffs' claims would be likely to be able to proceed if they were brought in an appropriate state court forum.

Further, plaintiffs' apparent judicial misconduct claims against Judges Connolly, Mackey, and Devine are barred by judicial immunity. It is well settled law that judges have immunity from suit for acts performed in their judicial capacities. See Mireles v. Waco, 502 U.S. 9 (1991) (per curiam). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004). Generally. the only scenarios wherein judicial immunity does not apply is for (1) "non-judicial actions, i.e., actions not taken in a judge's judicial capacity[,]" or (2) when a judge's actions are "judicial in nature" but "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 11 (1991). The Supreme Court has "generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature." Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith or malice" or "corruption." Mireles, 502 U.S. at 11; Imbler v. Pachtman, 424 U.S. 409, 419 n.12 (1976). A judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of authority." Mirales, 502 U.S. at 13 (quoting Stump v. Sparkman, 435 U.S. 349, 356 (1978)).

**8** The allegations in plaintiffs' complaint demonstrate that the claims against Judges Connolly, Mackey, and Devine were related to matters that were before them, were judicial in nature, and were within their jurisdiction. See generally Compl. Thus, regardless of plaintiffs' apparent claims of bad faith or malice on the part of defendants Connolly, Mackey, and Devine, these claims are barred by judicial immunity. See Mireles, 502 U.S. at 11.

Insofar as plaintiffs raise similar claims against defendant Corcoran, who served as Judge Mackey's judicial law clerk, Mr. Corcoran is also entitled to judicial immunity. Although Mr. Corcoran was not a judge during the time period in question, "judicial immunity can extend to non-judges 'who perform functions closely associated with the judicial process.' " Haydu v. U.S. Federal Government, 3:12-CV-1424 (MAD/DEP), 2013 WL 665066, at *42 (N.D.N.Y. Jan. 29, 2013) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200 (1983)). "[F]or the purposes of judicial immunity, judges and their law clerks are as one.' " Oliva v. Heller, 839 F.2d 37, 40 (2d Cir. 1988) (internal citation omitted); see also Bliven v. Hunt, 418 F. Supp. 2d 135, 138 (noting that judicial immunity "covers court clerks and law clerks with respect to discretionary acts that implement judicial decisions or that are performed at the direction or under the supervision of a judge.") (E.D.N.Y. 2005) (citing Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997)). As plaintiffs' complaint suggests that Mr. Corcoran assisted with the settlement proceedings, he was performing duties related to the adjudicative process. Therefore, judicial immunity applies to Mr. Corcoran's alleged actions as well. Id. Thus, it is recommended that, insofar as plaintiffs' complaint could be interpreted as raising claims for misconduct against Mr. Corcoran in his role of law clerk, such claims be dismissed with prejudice as barred by judicial immunity.

"[W]hen addressing a pro se complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotation marks and citation omitted). However, the Court is not required to grant leave to amend when doing so would be futile. See Cuoco v. Mortisugu, 222 F.3d 99, 112 (2d Cir. 2000). Here, "[t]he problem with [plaintiff's] causes of action is substantive [and] better pleading will not cure it"; therefore, any attempt to amend would be futile. Id. Accordingly, it is recommended that plaintiffs' complaint be dismissed in its entirety with prejudice, without opportunity to amend.

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

2021 WL 5991702

### III. Motion to Appoint Counsel

Plaintiffs' application for appointment of counsel provides that they have contacted several law firms, along with "law school," and "all bar associations," but that the small law firms "needed 25,000 thousand or more and lge [sic] firms were to [sic] politically connected and feare [sic] reprecutions [sic] to firms and future clients." Dkt. No. 3. Plaintiffs provide that they should be appointed counsel because "poor person status" and because none of the attorneys or firms would represent them because "they would have to go up against Judges in Albany County Supreme Court and it would hurt their business/firm & clients future." Id. Further, plaintiffs contend that to retain an attorney, "it would be a very large amount up front of close to 100 grand which I do not have." Id.

**\*9** Prior to evaluating a request for appointment of counsel, a party must demonstrate that he is unable to obtain counsel through the private sector or public interest firms. See Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173-74 (2d Cir 1989) (citing Hodge, 802 F.2d at 61). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. See Hendricks v. Coughlin, 114 F.3d 390, 392-93 (2d Cir. 1997). In Terminate Control Corp. v. Horowitz, the Second Circuit reiterated the factors that a court must consider in ruling upon a motion seeking assignment of counsel:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

28 F.3d 1335, 1341 (2d Cir. 1994) (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986)). Of these criteria, the Second Circuit has emphasized the importance of assessing "whether the indigent's position was likely of substance." Cooper v. A. Sargente & Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989). Thus, appointments of counsel are not to be granted "indiscriminately." Id. Although 28 U.S.C. § 1915(e)(1) authorizes the court "to request an attorney to represent any person unable to afford counsel," a civil litigant has no constitutional right to the assistance of counsel. Berrios v. New York City Housing Auth., 564 F.3d 130, 135 (2d Cir. 2009).

Plaintiffs do not provide proof that they contacted the listed attorneys, firms, or organizations, despite the form affirming that they "[a]ttached to this motion the correspondence I have received from the attorneys listed above." Dkt. No. 3 at 1. However, even assuming plaintiffs met their requirement of demonstrating the efforts they made to obtain counsel on their own, dismissal of the motion for appointment of counsel is appropriate for several reasons. First, the undersigned recommends that this case be dismissed without prejudice and without opportunity to amend. Thus, the undersigned has concluded that plaintiffs' complaint, in this context, is not "likely to be of substance." Cooper, 877 F.2d at 172. Should the district judge agree, no counsel would be required as the case will not proceed.

Second, plaintiffs have failed to meet other requirements of demonstrating that appointment of counsel is necessary and appropriate in this action. Plaintiffs' action has just been commenced and all that has been provided is the complaint, which is supported solely by plaintiffs' own allegations. "Where a plaintiff does not provide a Court with evidence, as opposed to mere allegations, relating to [his or] her claims against the defendant(s), [he or] she does not meet the first requirement imposed by the Second Circuit relative to application seeking appointment of counsel." Harmon v. Runyon, No. 96-CV-6080, 1997 WL 118379, at \*1 (S.D.N.Y. Mar. 17, 1997).

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

Case 5:24-cv-01003-BKS-TWD    Document 19    Filed 11/25/24    Page 66 of 70

2021 WL 5991702

Further, even if the district judge disagrees with this Report-Recommendation and permits the case to proceed, a different result on this motion for appointment of counsel would not be required. The fact that plaintiffs are proceeding pro se, are inexperienced in legal matters, and that defendants – if this case were to proceed -- would likely be represented by counsel, does not require this Court to appoint plaintiffs counsel. Were that the case, counsel would need to be appointed to nearly every pro se plaintiff in civil actions.

**\*10**  In addition, plaintiffs' financial inability to hire an attorney also does not require the appointment of counsel in a civil case. Appointment of counsel in civil cases is a privilege which is justified only by exceptional circumstances, not a right accorded to any plaintiff who would be better equipped or would feel more comfortable with legal representation. See, e.g., Brown v. Eaton Dev. Div. of Biddle Sawyer Corp., 780 F. Supp. 1025, 1026 (S.D.N.Y. 1992). Lack of knowledge of the law does not suffice to demonstrate that appointment of counsel would increase the likelihood of a just determination in this case. See Ballard v. United States, 11 Civ. 7162 (JSR)(RLE), 2012 WL 3765022, at \*1 (S.D.N.Y. Aug. 30, 2012) (denying appointment of counsel and stating that, "other than his general comment that he is 'completely unfamiliar with law,' the plaintiff "has not demonstrated any marked difficulties in presenting his case and fails to state why appointment of counsel would increase the likelihood of a just determination in this case.").

### IV. Conclusion

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiffs' motion for leave to proceed in forma pauperis (dkt. no. 2) is **GRANTED** for purposes of filing only; and it is

**ORDERED**, that plaintiffs' motion to appoint counsel (dkt. no. 3) is **DENIED**, and it is

**RECOMMENDED**, that plaintiffs' complaint (dkt. no. 1) be **DISMISSED with prejudice and without opportunity to amend**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [6]

[6]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(c).

### All Citations

Not Reported in Fed. Supp., 2021 WL 5991702

   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

2021 WL 5354762

2021 WL 5354762
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Pamela DELAP & Ronald Delap, Plaintiffs,
v.
Judge Michael MACKEY, et al., Defendants.

1:21-CV-0847 (LEK/CFH)
|
Signed 11/17/2021

**Attorneys and Law Firms**

Pamela Delap, Ballston Spa, NY, Pro Se.

Ronald Delap, Ballston Spa, NY, Pro Se.

**DECISION AND ORDER**

Lawrence E. Kahn, United States District Judge

## I. INTRODUCTION

 **\*1** Plaintiffs Pamela and Ronald Delap bring this pro se action against Defendants Judge Michael Mackey, Judge Gerald Connolly, Judge Justin Corcoran, Judge Eugene Devine, Jordan Pine, David Cabaniss, Zachary Mattison, Michael Serseloudi, DDS, Aspen Dental Management, Inc., Aspen Dental of Upper Hudson Valley, and Caitlin Insurance Company (collectively, "Defendants"). See Dkt. No. 1 ("Complaint"). On July 28, 2021, Plaintiffs filed their Complaint, a motion for leave to proceed in forma pauperis, Dkt. No. 2 ("IFP Application"), and a motion to appoint counsel, Dkt. No. 3. See Docket. On September 15, 2021, the Honorable Christian F. Hummel, United States Magistrate Judge, granted the IFP Application, denied the motion to appoint counsel, and recommended that Plaintiffs' Complaint be dismissed with prejudice and without opportunity to amend. See Dkt. No. 6 ("Report-Recommendation") at 23. Plaintiffs timely filed an objection to the Report-Recommendation. See Dkt. No. 9 ("Objection"). For the reasons discussed below, the Court adopts the Report-Recommendation with amendments.

## II. BACKGROUND

### A. Factual History
Plaintiffs' factual allegations are detailed in Judge Hummel's Report-Recommendation, familiarity with which is assumed. See R. & R. at 5–12.

### B. Report-Recommendation
In his Report-Recommendation, Magistrate Judge Christian Hummel recommended that Plaintiff's Complaint be dismissed because it was largely barred by the Rooker-Feldman doctrine, and to the extent that claims were not barred by Rooker-Feldman, they were not sufficient to establish the Court's jurisdiction. See id. at 12–18. Furthermore, Judge Hummel noted that judicial immunity may bar claims against some of the Defendants. See id. at 18–19.

## III. LEGAL STANDARD

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

2021 WL 5354762

Case 5:24-cv-01003-BKS-TWD    Document 19    Filed 11/25/24    Page 68 of 70

### A. Review of a Report-Recommendation

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); see also L.R. 72.1(c). A court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. See Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); see also Demuth v. Cutting, No. 18-CV-789, 2020 WL 950229, at *2 (N.D.N.Y. Feb. 27, 2020) (Kahn, J.). "[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." Zhao v. State Univ. of N.Y., 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) (internal quotation marks and citation omitted); see also Hubbard v. Kelley, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

### B. Motion to Appoint Counsel

**\*2** 28 U.S.C. § 1915(e) authorizes the courts to "request an attorney to represent any person unable to afford counsel." "When deciding whether to appoint *pro bono* counsel, however, a court must give deference to the limited resources available to serve the interests of the many indigent litigants who pursue claims before it ... and should therefore not grant such applications indiscriminately but instead must exercise sound judgment and restraint when doing so." Vasquez v. Whitney, No. 16-CV-0623, 2018 WL 4702063, at *5 (N.D.N.Y. Sept. 28, 2018) (Kahn, J.) (internal citations omitted). In addition, a number of factors must be considered before a court can undertake such an action:

> [A court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Hodge v. Police Officers, 802 F.2d 58, 61–62 (2d Cir. 1986). None of those individual factors is controlling, however, and " 'each case must be decided on its own facts.' " Velasquez v. O'Keefe, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (quoting Hodge, 802 F.2d at 61).

### IV. DISCUSSION

### A. The Report-Recommendation

Here, an objection was raised in the allotted time with respect to Magistrate Judge Hummel's Report-Recommendation. For purposes of review of the Report-Recommendation and in consideration of Plaintiffs' pro se status, the Court will undertake a de novo determination.

Plaintiffs contend that the Magistrate Judge erred in concluding that the Rooker-Feldman doctrine barred their claims. See Objection at 1–2. Furthermore, Plaintiffs dispute the applicability of judicial immunity. See id. at 12, 15–16.

Case 5:24-cv-01003-BKS-TWD   Document 19   Filed 11/25/24   Page 69 of 70

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

2021 WL 5354762

The Courts begins by noting that it "must determine whether it has subject matter jurisdiction before proceeding to evaluate the merits of a plaintiff's cause of action." Borenkoff v. Buffalo Wild Wings, Inc., No. 16-CV-8532, 2018 WL 502680, at *2 (S.D.N.Y. Jan. 19, 2018). Generally, federal courts may only exercise subject matter jurisdiction if a complaint raises a federal question, 28 U.S.C. § 1331, or if the plaintiff and defendant have diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Even if subject matter jurisdiction is present, the Court may still not be able to exercise jurisdiction because of the Rooker-Feldman doctrine. [1]  See Andrews v. Citimortgage, Inc., No. 14-CV-1534, 2015 WL 1509511, at *4– *6 (E.D.N.Y. Mar. 31, 2015). Thus, in this case, the Court should first determine whether subject matter jurisdiction is present before determining whether the Rooker-Feldman doctrine bars jurisdiction in this action. The Magistrate Judge, however, first determined that the Rooker-Feldman doctrine barred most of Plaintiffs' claims, and then it determined that subject matter jurisdiction was not present over the remaining claims. See R. & R. at 12, 15–18.

[1]     The Rooker-Feldman doctrine bars "federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " Sykes v. Mel S. Harris and Assoc. LLC, 780 F3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

### 1. Subject-Matter Jurisdiction - Federal Question

 **\*3**  When viewed in the light most favorable to Plaintiffs, their Complaint does not cite any federal law except for passing references to 18 U.S.C. §§ 241–42. Compl. at 12. "Courts have found that there is no federal question jurisdiction when a private party brings federal criminal claims for which there is no private right of action." Cain v. U.S. Bank, Nat'l Ass'n, No. 20-CV-5034, 2021 WL 3884196, at *3 (E.D.N.Y. Aug. 31, 2021); see also Limtung v. Thomas, No. 19-CV-3646, 2019 WL 6253815, at *3 (E.D.N.Y. Nov. 21, 2019) ("Title 18 of the United States Code encompasses laws on crimes and criminal procedure, and there is no private right of action for violations of a criminal statute. Accordingly, the Court does not appear to have federal question jurisdiction over this action." (internal quotations and citations omitted)). Moreover, in their Complaint, Plaintiffs contend that the federal courts have jurisdiction to hear their claim because their "civil rights were violated and the NYS AG attorneys mentioned told me I needed to go to Federal court as the State would not be acceptable to my complaint and they would have to represent the Judges, even though they stated clearly, Judge Hartman is a good judge, but could not state to me that about the others." Compl. at 12. If "[s]imply raising a federal issue in a complaint will not automatically confer federal question jurisdiction," Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002), then the same can be said about vague references to "civil rights." Since federal law does not create the cause of action nor does Plaintiffs' relief depend on the resolution of a "substantial question of federal law," id., the Court finds that there is no federal question present at this time. Of course, there are federal civil rights statutes that Plaintiff could potentially allege in an amended complaint, but Plaintiff must explain how they apply.

### 2. Subject-Matter Jurisdiction - Diversity Jurisdiction

Diversity jurisdiction requires "complete" diversity; no adverse parties may be citizens of the same state. Gaffney ex rel. Molloy v. Animas Corp., No. 13-CV-1359, 2014 WL 2106258, at *1 (N.D.N.Y. May 20, 2014) (internal citations omitted) (Kahn, J.). The Court is not convinced that "complete" diversity is present in this case because Plaintiffs are citizens of New York, and they are suing New York State judges and corporations who likely maintain New York as a place of business (e.g., Aspen Dental of Upper Hudson Valley). See id. ("[A] corporation is a citizen of any state in which it is incorporated, as well as the state where it maintains its principal place of business.") (internal citations omitted). Even if Plaintiffs are able to establish "complete" diversity, Plaintiffs did not allege whether the amount in controversy exceeds $75,000.

Thus, the Court lacks subject matter jurisdiction and need not address the Rooker-Feldman doctrine or judicial immunity. Because the Court lacks subject matter jurisdiction, however, it cannot dismiss the Complaint with prejudice. Hernandez v.

Delap v. Mackey, Not Reported in Fed. Supp. (2021)

2021 WL 5354762

Case 5:24-cv-01003-BKS-TWD    Document 19    Filed 11/25/24    Page 70 of 70

Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist."). Normally, the Court could deny leave to amend if there are jurisdictional defects that could not be cured by an amendment. See Rogers v. Clinton, No. 19-CV-175, 2019 WL 3469462, at *5 (N.D.N.Y. Apr. 1, 2019) (dismissing without prejudice for lack of subject matter jurisdiction, but denying leave to amend) report and recommendation adopted, 2019 WL 3454099 (N.D.N.Y. July 31, 2019) (Kahn, J.); Koso v. Haegele, No. 18-CV-4400, 2018 WL 6531496, at *3 (E.D.N.Y. Dec. 11, 2018) (same). This is not one of those situations and Plaintiff should be afforded at least one chance to amend the Complaint. See Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotation marks and citation omitted).

**B. Motion to Appoint Counsel**

At this preliminary stage, even if the Court were to assume that Plaintiffs' position seems likely to be of substance, the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; and (3) if this case survives any dispositive motions filed by Defendants, it is highly probable that the Court will appoint trial counsel at the final pretrial conference. For the first time in their Objection, Plaintiffs contend that they are entitled to an attorney as a reasonable accommodation under the Americans with Disabilities Act. See Objection at 10–11. Since Plaintiffs did not raise this argument before the Magistrate Judge, the Court need not address this newly raised argument. Thus, Plaintiff's motion for appointment of counsel is denied without prejudice.

**V. CONCLUSION**

**\*4**  Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 6) is **APPROVED and ADOPTED** as modified by this opinion; and it is further

**ORDERED**, that the Court **DISMISS WITHOUT PREJUDICE and WITH LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1); and it is further

**ORDERED**, that Plaintiff's motion to appoint counsel (Dkt. No. 3) is **DISMISSED without prejudice**; and it is further

**ORDERED**, that in the event Plaintiff fails to file an amended complaint **within thirty (30) days** of the filing date of this Order, the Clerk shall enter judgment dismissing this action due to Plaintiff's failure to comply with the terms of this Order, without further order of the Court; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5354762

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.